FILED
JUL 18 2008
USDC WP SDNY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
══════════════════════════════════════X

NANCY ARCE LAPORTE,

Plaintiff[s],

-against-

GENWORTH FINANCIAL,

Defendant[s].
══════════════════════════════════════X

**COMPLAINT**

**08 CIV. 6445**

**JUDGE KARAS**

The plaintiff, NANCY ARCE LAPORTE, by her attorneys, THE LAW FIRM OF JOSEPH LANNI, P.C., complaining of the defendant, respectfully shows to this Court and alleges, upon information and belief, as follows:

<u>PARTIES</u>

1. That at all times hereinafter mentioned, plaintiff NANCY ARCE LAPORTE was and is a resident of the County of Putnam in the State of New York, residing at 10 Ashley Rd., Mahopac, N.Y. 10541.

2. That at all times hereinafter mentioned, defendant GENWORTH FINANCIAL, INC., was and is a resident of the State of Virginia with its principal executive offices located at 6620 West Broad St., Richmond, VA 23230.

1

3. That at all times hereinafter mentioned, defendant GENWORTH FINANCIAL, INC., was and is a business corporation duly incorporated, organized and existing pursuant to the laws of the State of Delaware.

4. That at all times hereinafter mentioned, defendant GENWORTH FINANCIAL, INC., was and is a business corporation with offices and operations located at 3100 Albert Lankford Dr., Lynchburg, VA 24501.

5. That at all times hereinafter mentioned, defendant GENWORTH FINANCIAL, INC., was and is a business corporation engaged in the life insurance business.

6. That at all times hereinafter mentioned, defendant GENWORTH FINANCIAL, INC., was and is a business corporation doing business in the State of New York.

7. That at all times hereinafter mentioned, defendant GENWORTH FINANCIAL, INC., was and is a business corporation with operations, including a life insurance business, in the State of New York.

8. That at all times hereinafter mentioned, defendant GENWORTH FINANCIAL, INC., was and is a business corporation with an "operating segment" known as GENWORTH LIFE INSURANCE COMPANY OF NEW YORK (*see, GENWORTH FINANCIAL, INC., 2007 SEC Form 10 – K Annual Report & 2008 SEC Form 10 – Q 1st Quarter Report*)

9. That at all times hereinafter mentioned, defendant GENWORTH FINANCIAL, INC., was and is a business corporation with an agent known as GENWORTH LIFE INSURANCE COMPANY OF NEW YORK (*see, GENWORTH FINANCIAL, INC., 2007 SEC Form 10 – K Annual Report & 2008 SEC Form 10 – Q 1st Quarter Report*).

10. That at all times hereinafter mentioned, defendant GENWORTH FINANCIAL, INC., was and is a business corporation with a division, subdivision, subsidiary and/or department known as GENWORTH LIFE INSURANCE COMPANY OF NEW YORK (*see, GENWORTH FINANCIAL, INC., 2007 SEC Form 10 – K Annual Report & 2008 SEC Form 10 – Q 1st Quarter Report*)

11. That at all times hereinafter mentioned, defendant GENWORTH FINANCIAL, INC., was and is a business corporation that wholly owns, operates, and controls an "operating segment", agent, division, subdivision, subsidiary and/or department known as GENWORTH LIFE INSURANCE COMPANY OF NEW YORK (*see, GENWORTH FINANCIAL, INC., 2007 SEC Form 10 – K Annual Report & 2008 SEC Form 10 – Q 1st Quarter Report*)

12. That at all times hereinafter mentioned, defendant GENWORTH FINANCIAL, INC., was and is a business corporation maintaining joint, consolidated, common, combined, and merged operations, functions, activities, marketing, finances,

financial statements, reporting, filings, assets, liabilities, obligations, and property with GENWORTH LIFE INSURANCE COMPANY OF NEW YORK (*see, GENWORTH FINANCIAL, INC., 2007 SEC Form 10 – K Annual Report & 2008 SEC Form 10 – Q 1st Quarter Report*).

13. That at all times hereinafter mentioned, GENWORTH LIFE INSURANCE COMPANY OF NEW YORK was and is a business entity with offices and operations located at 3100 Albert Lankford Dr., Lynchburg, VA 24501.

14. That at all times hereinafter mentioned, GENWORTH LIFE INSURANCE COMPANY OF NEW YORK was and is engaged in the life insurance business.

15. That at all times hereinafter mentioned, GENWORTH LIFE INSURANCE COMPANY OF NEW YORK was and is doing business in the State of New York.

16. That at all times hereinafter mentioned, GENWORTH LIFE INSURANCE COMPANY OF NEW YORK was and is a business entity with operations, including a life insurance business, in the State of New York.

17. That at all times hereinafter mentioned, defendant GENWORTH FINANCIAL, INC., was and is the assignee of the assets, liabilities, obligations, contracts, insurance policies, commitments, investments, accounts, income, revenues,

operations and property of a life insurance business known as American Mayflower Life Insurance Company of New York.

18. That at all times hereinafter mentioned, defendant GENWORTH FINANCIAL, INC., was and is the obligor of the assets, liabilities, contracts, insurance policies, commitments, investments, accounts, income, revenues, operations and property of a life insurance business known as American Mayflower Life Insurance Company of New York.

19. That at all times hereinafter mentioned, defendant GENWORTH FINANCIAL, INC., was and is the successor in interest of the assets, liabilities, contracts, insurance policies, commitments, investments, accounts, income, revenues, operations and property of a life insurance business known as American Mayflower Life Insurance Company of New York.

20. That at all times hereinafter mentioned, defendant GENWORTH FINANCIAL, INC., purchased, assumed and became the owner of the assets, liabilities, obligations, contracts, insurance policies, commitments, investments, accounts, income, revenues, operations and property of a life insurance business known as American Mayflower Life Insurance Company of New York.

21. That at all times hereinafter mentioned, GENWORTH LIFE INSURANCE COMPANY OF NEW YORK, as an "operating segment", agent, division,

subdivision, subsidiary and/or department of defendant GENWORTH FINANCIAL, INC., was and is the assignee of the assets, liabilities, obligations, contracts, insurance policies, commitments, investments, accounts, income, revenues, operations and property of a life insurance business known as American Mayflower Life Insurance Company of New York.

22. That at all times hereinafter mentioned, GENWORTH LIFE INSURANCE COMPANY OF NEW YORK, as an "operating segment", agent, division, subdivision, subsidiary and/or department of defendant GENWORTH FINANCIAL, INC., was and is the obligor of the assets, liabilities, contracts, insurance policies, commitments, investments, accounts, income, revenues, operations and property of a life insurance business known as American Mayflower Life Insurance Company of New York.

23. That at all times hereinafter mentioned, GENWORTH LIFE INSURANCE COMPANY OF NEW YORK, as an "operating segment", agent, division, subdivision, subsidiary and/or department of defendant GENWORTH FINANCIAL, INC., purchased, assumed and became the owner of the assets, liabilities, obligations, contracts, insurance policies, commitments, investments, accounts, income, revenues, operations and property of a life insurance business known as American Mayflower Life Insurance Company of New York.

24. That at all times hereinafter mentioned, GENWORTH LIFE INSURANCE COMPANY OF NEW YORK, as an "operating segment", agent, division, subdivision, subsidiary and/or department of defendant GENWORTH FINANCIAL, INC., was and is the successor in interest of the assets, liabilities, obligations, contracts, insurance policies, commitments, investments, accounts, income, revenues, operations and property of a life insurance business known as American Mayflower Life Insurance Company of New York.

## JURISDICTION

25. That the jurisdiction of this Court is premised upon the diversity of citizenship among the parties, as plaintiff is a citizen of the State of New York and the defendant is a citizen of the State of Virginia with its principal executive offices and actual place of business in that state.

26. That the matter in controversy exceeds, exclusive of interest and costs, the sum specified by *28 U.S.C. § 1332* (*i.e.*: $75,000.00).

## VENUE

27. That the venue of this action is premised upon the fact that the transactions and occurrences which form the basis of the plaintiff's Complaint took place in the State of New York and in the County of Putnam in New York.

<u>JURY DEMAND</u>

28. That plaintiff NANCY ARCE LAPORTE demands trial by jury of all issues presented in this action which are triable as of right by a jury pursuant to *F.R.C.P. 38 (a)*.


<u>AS AND FOR A FIRST CAUSE OF ACTION</u>

29. That plaintiff realleges, reiterates and repeats each and every allegation contained in paragraphs 1 through 28 set forth above in this Complaint with the same force and effect as if such allegations were set forth in this paragraph.


30. That at all times hereinafter mentioned, defendant GENWORTH FINANCIAL, INC., and its "operating segment", agent, division, subdivision, subsidiary and/or department, GENWORTH LIFE INSURANCE COMPANY OF NEW YORK, through its predecessor, American Mayflower Life Insurance Company of New York, was the issuer and obligor of a term life insurance policy, identified as Policy Number M 318,962, in the amount of FIVE HUNDRED THOUSAND and 00/100 DOLLARS ($500,000.00). (*See, Exhibit A, Term Life Insurance Policy [Policy Number M 318,962], issued January 26, 2005, by American Mayflower Life Insurance Company of New York.*)


31. That at all times hereinafter mentioned, ADAM LAPORTE (Deceased) was the purchaser, owner and insured of a term life insurance policy, identified as Policy Number M 318,962, in the amount of FIVE HUNDRED THOUSAND and

00/100 DOLLARS ($500,000.00) issued, sold and guaranteed by defendant GENWORTH FINANCIAL, INC., and its "operating segment", agent, division, subdivision, subsidiary and/or department, GENWORTH LIFE INSURANCE COMPANY OF NEW YORK, through its predecessor, American Mayflower Life Insurance Company of New York. (*See, Exhibit A, Term Life Insurance Policy [Policy Number M 318,962], issued January 26, 2005, by American Mayflower Life Insurance Company of New York.*)

32. That in or about the period July 2004 – January 2005, ADAM LAPORTE and American Mayflower Life Insurance Company of New York, the predecessor to defendant GENWORTH FINANCIAL, INC., and its "operating segment", agent, division, subdivision, subsidiary and/or department, GENWORTH LIFE INSURANCE COMPANY OF NEW YORK, negotiated, formulated, agreed to and entered into a written contract and agreement between these parties for the provision of term life insurance in the amount of FIVE HUNDRED THOUSAND and 00/100 DOLLARS ($500,000.00) and, pursuant to such contract, ADAM LAPORTE was the named insured in exchange for monetary compensation in the form of premium payments to the insurer made by or on behalf of ADAM LAPORTE (Deceased) as consideration. (*See, Exhibit A, Term Life Insurance Policy [Policy Number M 318,962], issued January 26, 2005, by American Mayflower Life Insurance Company of New York.*)

33. That in or about the period July 2004 – January 2005, while in the process of negotiating, formulating, agreeing to and entering into the aforementioned contract, ADAM LAPORTE (Deceased) prepared, completed, signed, dated and submitted a two (2) part application, consisting of "Application for Life Insurance – Part I" (three (3) pages) and "Application Part II – Medical History" (one (1) page) to American Mayflower Life Insurance Company of New York. *(See, Exhibit A, Term Life Insurance Policy [Policy Number M 318,962], issued January 26, 2005, by American Mayflower Life Insurance Company of New York.)*

34. That the two (2) part application, consisting of the "Application for Life Insurance – Part I" (three (3) pages) and the "Application Part II – Medical History" (one (1) page), was incorporated into the contract. *(See, Exhibit A, Term Life Insurance Policy [Policy Number M 318,962], issued January 26, 2005, by American Mayflower Life Insurance Company of New York, "Application for Life Insurance – Parts I & II".)*

35. That the "Application for Life Insurance – Part I" contains an "Authorization to Collect and Disclose Information", signed and dated November 1, 2004, by ADAM LAPORTE (Deceased), that gave comprehensive and complete authorization, permission and consent to the disclosure, retrieval and collection of any and all medical, medical related, health care, financial, credit, and insurance information, among other types of personal information, about ADAM

LAPORTE from physicians, hospitals, clinics, health care providers, Medical Information Bureau (i.e.: MIB), consumer reporting agencies, insurers, employers, government agencies and individuals to American Mayflower Life Insurance Company of New York. *(See, Exhibit A, Term Life Insurance Policy [Policy Number M 318,962], issued January 26, 2005, by American Mayflower Life Insurance Company of New York, "Application for Life Insurance – Part I" [page 3 of 3].)*

36. That the "Authorization to Collect and Disclose Information", signed and dated November 1, 2004, by ADAM LAPORTE (Deceased), authorized and permitted American Mayflower Life Insurance Company of New York and/or its agents, representatives, reinsurers, contractors or subcontractors, to obtain, retrieve and collect any and all medical, medical related, health care, financial, credit, and insurance information, among other types of personal information, about ADAM LAPORTE, for a period of twenty-four (24) months or until November 1, 2006. *(See, Exhibit A, Term Life Insurance Policy [Policy Number M 318,962], issued January 26, 2005, by American Mayflower Life Insurance Company of New York, "Application for Life Insurance – Part I" [page 3 of 3].)*

37. That in or about the period July 2004 – January 2005, while in the process of negotiating, formulating, agreeing to and entering into the contract, ADAM LAPORTE (Deceased) made himself available for a physical examination performed by or on behalf of American Mayflower Life Insurance Company of

New York and/or its agents, employees, representatives, contractors or subcontractors.

38. That the aforementioned "Authorization to Collect and Disclose Information" was used by American Mayflower Life Insurance Company of New York and/or its agents, employees, representatives, reinsurers, contractors or subcontractors, and/or defendant GENWORTH FINANCIAL, INC., GENWORTH LIFE INSURANCE COMPANY OF NEW YORK, and/or their agents, employees, representatives, reinsurers, contractors or subcontractors, to obtain, retrieve and collect medical, medical related, health care, financial, credit, and insurance information, among other types of personal information, about ADAM LAPORTE during the period of November 1, 2004 – November 1, 2006.

39. That, in the alternative, American Mayflower Life Insurance Company of New York and/or its agents, employees, representatives, reinsurers, contractors or subcontractors, and/or defendant GENWORTH FINANCIAL, INC., GENWORTH LIFE INSURANCE COMPANY OF NEW YORK, and/or their agents, employees, representatives, reinsurers, contractors or subcontractors, failed to use the "Authorization to Collect and Disclose Information" to obtain, retrieve and collect medical, medical related, health care, financial, credit, and insurance information, among other types of personal information, about ADAM LAPORTE during the period of November 1, 2004 – November 1, 2006.

40. That the failure to use the "Authorization to Collect and Disclose Information" by American Mayflower Life Insurance Company of New York and/or its agents, employees, representatives, reinsurers, contractors or subcontractors, and/or defendant GENWORTH FINANCIAL, INC., GENWORTH LIFE INSURANCE COMPANY OF NEW YORK, and/or their agents, employees, representatives, reinsurers, contractors or subcontractors to obtain, retrieve and collect medical, medical related, health care, financial, credit, and insurance information, among other types of personal information, about ADAM LAPORTE during the period of November 1, 2004 – November 1, 2006, constitutes a waiver by defendant GENWORTH FINANCIAL, INC., of any right to disclaim payment or contest any claim to payment of the life insurance policy under the contract based on statements in the application.

41. That in or about the period November 1, 2004 – November 1, 2006, medical information, medical related information, and other personal information on ADAM LAPORTE was obtained, retrieved, collected, maintained, archived and/or stored by insurance services agencies and insurance investigative agencies retained, employed, contracted, hired and/or used by defendant GENWORTH FINANCIAL, INC., GENWORTH LIFE INSURANCE COMPANY OF NEW YORK and/or predecessor American Mayflower Life Insurance Company of New York.

42. That in or about the period November 1, 2004 – November 1, 2006, defendant GENWORTH FINANCIAL, INC., GENWORTH LIFE INSURANCE COMPANY OF NEW YORK and/or predecessor American Mayflower Life Insurance Company of New York had the opportunity to review medical information, medical related information, and other personal information on ADAM LAPORTE that had been obtained, retrieved, collected, maintained and stored by insurance services agencies and insurance investigative agencies retained, employed, contracted, hired and/or used by such insurance companies.

43. That in or about the period November 1, 2004 – November 1, 2006, defendant GENWORTH FINANCIAL, INC., GENWORTH LIFE INSURANCE COMPANY OF NEW YORK and/or predecessor American Mayflower Life Insurance Company of New York had actual and/or constructive knowledge of and/or reviewed medical information, medical related information, and other personal information on ADAM LAPORTE that had been obtained, retrieved, collected, maintained and stored by insurance services agencies and insurance investigative agencies retained, employed, contracted, hired and/or used by such insurance companies.

44. That on or about January 26, 2005, American Mayflower Life Insurance Company of New York, as predecessor to defendant GENWORTH FINANCIAL, INC., and its "operating segment", agent, division, subdivision, subsidiary and/or department, GENWORTH LIFE INSURANCE COMPANY OF NEW YORK,

formally agreed to, entered into and issued the contract with ADAM LAPORTE (Deceased). (*See, Exhibit A, Term Life Insurance Policy [Policy Number M 318,962], issued January 26, 2005, by American Mayflower Life Insurance Company of New York.*)

45. That at all times hereinafter mentioned, the contract named plaintiff NANCY ARCE LAPORTE as the primary beneficiary of the term life insurance policy. (*See, Exhibit A, Term Life Insurance Policy [Policy Number M 318,962], issued January 26, 2005, by American Mayflower Life Insurance Company of New York.*)

46. That the terms of the contract, aside from the incorporated application for life insurance, are set forth in their entirety within the document. (*See, Exhibit A, Term Life Insurance Policy [Policy Number M 318,962], issued January 26, 2005, by American Mayflower Life Insurance Company of New York, see pages 1 – 2, 2A, 3 – 6, 6A, 7 – 8, Endorsement [Form AM – 9240] & Endorsement [Form AM – 9248 – COD].*)

47. That in or about the period January 2005 – March 2008, there was full compliance with the terms of the contract on the part of or on behalf of insured ADAM LAPORTE (Deceased) with the payment of all premiums due to defendant GENWORTH FINANCIAL, INC., GENWORTH LIFE INSURANCE

COMPANY OF NEW YORK and/or predecessor American Mayflower Life Insurance Company of New York.

48. That on a date unknown during the period January 26, 2005 – March 26, 2008, defendant GENWORTH FINANCIAL, INC., and its "operating segment", agent, division, subdivision, subsidiary and/or department, GENWORTH LIFE INSURANCE COMPANY OF NEW YORK became the issuer, assignee, obligor, and insurer of the contract.

49. That in or about the period January 26, 2005 – March 26, 2008, the contract remained in full force and effect.

50. That the insured, ADAM LAPORTE (Deceased), died on November 9, 2006. (*See, Exhibit B, Corrected Death Certificate, dated March 20, 2008; and Exhibit C, Final M.E. Autopsy Report, dated April 3, 2008.*)

51. That the official cause of death for insured ADAM LAPORTE (Deceased) is "[f]ractures of skull, ribs and upper extremity; lacerations and contusions of brain, lungs and liver". (*See, Exhibit B, Corrected Death Certificate, dated March 20, 2008; and Exhibit C, Final M.E. Autopsy Report, dated April 3, 2008.*)

52. That the official manner of death for insured ADAM LAPORTE (Deceased) is "undetermined circumstances". (*See, Exhibit B, Corrected Death Certificate,*

*dated March 20, 2008; and Exhibit C, Final M.E. Autopsy Report, dated April 3, 2008.)*

53. That the terms of the contract, in pertinent part, state as follows:

> "American Mayflower Life Insurance Company of New York, A Stock Company, will pay the Beneficiary the death proceeds as defined in this Policy.  Payment will not be made until all of the following have been received at the home office:
> - this Policy;
> - due proof that the Insured died prior to the Expiry Date while this Policy was in force; and
> - a written claim for the death proceeds completed on a form supplied by the Company.
>
> Any payment is subject to the provisions on this page and on the following pages."

*(See, Exhibit A, Term Life Insurance Policy [Policy Number M 318,962], issued January 26, 2005, by American Mayflower Life Insurance Company of New York, page 1.)*

54. That on or about April 15, 2008, primary beneficiary NANCY ARCE LAPORTE submitted a valid claim for payment of the FIVE HUNDRED THOUSAND and 00/100 DOLLAR ($500,000.00) amount of the life insurance policy to defendant GENWORTH FINANCIAL, INC., and GENWORTH LIFE INSURANCE COMPANY OF NEW YORK.

55. That on or about April 15, 2008, primary beneficiary NANCY ARCE LAPORTE fully complied with the terms of the contract and any and all requirements under

the applicable law of the State of New York for payment of the life insurance policy by submitting the following documents:

1. The complete original life insurance policy (No. M318962) issued to Adam LaPorte on January 26, 2005;

2. A certified raised seal Certificate of Death for Adam LaPorte;

3. Proof of Loss Claimant's Statement (11 pages) completed and signed by Nancy LaPorte;

4. Final M.E. Autopsy Report for Adam LaPorte (PME 06 – 43.2), dated April 3, 2008, (5 pages & 2 page addendum) attached to Proof of Loss Physician Statement (2 pages).

to defendant GENWORTH FINANCIAL, INC., and GENWORTH LIFE INSURANCE COMPANY OF NEW YORK. *(See, Exhibit A, Term Life Insurance Policy [Policy Number M 318,962], issued January 26, 2005, by American Mayflower Life Insurance Company of New York; Exhibit B, Corrected Death Certificate, dated March 20, 2008; Exhibit C, Final M.E. Autopsy Report, dated April 3, 2008; Exhibit D, Proof of Loss Claimant's Statement [11 pages]; & Exhibit E, Correspondence of Counsel, Joseph Lanni, Esq., Joseph Lanni, P.C., dated April 15, 2008.)*

56. That on or about April 15, 2008, primary beneficiary NANCY ARCE LAPORTE also submitted a "Proof of Loss Physician's Statement" [2 pages] that had been provided for her completion by defendant GENWORTH FINANCIAL, INC., and GENWORTH LIFE INSURANCE COMPANY OF NEW YORK which indicated that it was to be completed by the deceased's "primary care physician"

and requested a signed declaration regarding the insured's "manner of death", "previous illness", "substance use", and "physician / practitioner information". (*See, Exhibit F, Proof of Loss Physician's Statement [2 pages].*)

57. That on or about April 15, 2008, primary beneficiary NANCY ARCE LAPORTE submitted the "Proof of Loss Physician's Statement" [2 pages] to defendant GENWORTH FINANCIAL, INC., and GENWORTH LIFE INSURANCE COMPANY OF NEW YORK with the following annotations:

> "(1) Decedent without primary care physician at time of death. (2) Decedent's death did not occur in a hospital or medical facility & decedent not attended by physician at time of death. (3) Please see attached Final Autopsy Report of Putnam County Coroner & Certificate of Death submitted as Proof of Loss Physician's Statement in response to request for information on this form."

(*See, Exhibit B, Corrected Death Certificate, dated March 20, 2008; Exhibit C, Final M.E. Autopsy Report, dated April 3, 2008; Exhibit F, Proof of Loss Physician's Statement [2 pages].*)

58. That on or about April 15, 2008, primary beneficiary NANCY ARCE LAPORTE became entitled to payment of the FIVE HUNDRED THOUSAND and 00/100 DOLLAR ($500,000.00) amount of the life insurance policy by defendant GENWORTH FINANCIAL, INC., and/or its "operating segment", agent, division, subdivision, subsidiary and/or department, GENWORTH LIFE INSURANCE COMPANY OF NEW YORK, under the terms of the contract and the applicable law of the State of New York.

59. That from on or about April 15, 2008, to the present time, defendant GENWORTH FINANCIAL, INC., and/or its "operating segment", agent, division, subdivision, subsidiary and/or department, GENWORTH LIFE INSURANCE COMPANY OF NEW YORK, has breached the terms of the contract by failure to make payment of the FIVE HUNDRED THOUSAND and 00/100 DOLLAR ($500,000.00) amount of the life insurance policy to primary beneficiary NANCY ARCE LAPORTE.

60. That from on or about April 15, 2008, to the present time, defendant GENWORTH FINANCIAL, INC., and/or its "operating segment", agent, division, subdivision, subsidiary and/or department, GENWORTH LIFE INSURANCE COMPANY OF NEW YORK, breached the terms of the contract by improperly, intentionally, willfully, and inexcusably refusing to comply with the terms of the contract and make the required payment.

61. That from on or about April 15, 2008, to the present time, defendant GENWORTH FINANCIAL, INC., and/or its "operating segment", agent, division, subdivision, subsidiary and/or department, GENWORTH LIFE INSURANCE COMPANY OF NEW YORK, has improperly, intentionally, willfully, inexcusably, and repeatedly cited the necessity to conduct an "investigation" to "validate the information that was provided to us on the

application for insurance" as its sole grounds for the refusal to make payment under the aforementioned contract.

62. That in correspondence dated April 25, 2008, defendant GENWORTH FINANCIAL, INC., and its "operating segment", agent, division, subdivision, subsidiary and/or department, GENWORTH LIFE INSURANCE COMPANY OF NEW YORK, has specifically stated:

> "The purpose of our investigation is to validate the information that was provided to us on the application for insurance. In such situations, it is our normal business procedure to obtain medical records and other information in order to validate the answers given on the application for insurance. A claim decision cannot be rendered for claim benefits until we have received and reviewed all records needed to complete our evaluation."

*(See, Exhibit G, Correspondence of defendant GENWORTH FINANCIAL, INC., and GENWORTH LIFE INSURANCE COMPANY OF NEW YORK, dated April 25, 2008.)*

63. That in additional correspondence dated April 25, 2008, defendant GENWORTH FINANCIAL, INC., and its "operating segment", agent, division, subdivision, subsidiary and/or department, GENWORTH LIFE INSURANCE COMPANY OF NEW YORK, specifically asserted that "requirements" to be satisfied prior to consideration of the claim for payment made by primary beneficiary NANCY ARCE LAPORTE remained "outstanding" and listed five (5) "required" items that included the following:

"1. Proof of Loss Claimant's Statement Part 1 and Part 3 to be completed and signed by the beneficiary. Should interest be paid on the proceeds, the IRS will require the beneficiary's social security number. 2. A certified death certificate. 3. The return of the complete original policy. 4. An attending physician's statement to be completed and signed by the deceased's regular doctor. 5. An authorization to be completed by a personal representative of the estate. If no representative has been appointed, a spouse or other authorized person may sign the form."

*(See, Exhibit H, Correspondence of defendant GENWORTH FINANCIAL, INC., and GENWORTH LIFE INSURANCE COMPANY OF NEW YORK, dated April 25, 2008.)*

64. That on or about May 16, 2008, primary beneficiary NANCY ARCE LAPORTE communicated a demand that defendant GENWORTH FINANCIAL, INC., and its "operating segment", agent, division, subdivision, subsidiary and/or department, GENWORTH LIFE INSURANCE COMPANY OF NEW YORK, comply with the terms of the contract and make payment of the FIVE HUNDRED THOUSAND and 00/100 DOLLAR ($500,000.00) amount of the life insurance policy. *(See, Exhibit I, Correspondence of Counsel, Joseph Lanni, Esq., Joseph Lanni, P.C., dated May 16, 2008.)*

65. That on or about May 16, 2008, primary beneficiary NANCY ARCE LAPORTE advised defendant GENWORTH FINANCIAL, INC., and its "operating segment", agent, division, subdivision, subsidiary and/or department, GENWORTH LIFE INSURANCE COMPANY OF NEW YORK, in pertinent part, of the following:

"Nowhere in the policy does it state that the beneficiary is required to do anything more than comply with aforementioned three conditions of submitting the policy, a certified death certificate, and the written claim form, i.e., "Proof of Loss Claimant's Statement". According to my review of the policy and applicable law, there are no other requirements imposed on my client to properly claim these life insurance proceeds.  The beneficiary is not required by any policy provision, contractual term, statute, regulation or other authority to submit to an interview, sign an authorization for the decedent's medical records, obtain an attending physician's statement, provide services or assistance for any investigation, or perform any other act or task to claim the $500,000.00 death proceeds under this life insurance policy.  If you believe that Mrs. LaPorte is required by the policy or applicable law to do anything more than satisfy the three conditions set forth above, please advise me of the specific authority and the exact language that imposes such requirements upon a beneficiary."

*(See, Exhibit I, Correspondence of Counsel, Joseph Lanni, Esq., Joseph Lanni, P.C., dated May 16, 2008, p. 2.)*

66. That on or about May 16, 2008, primary beneficiary NANCY ARCE LAPORTE warned defendant GENWORTH FINANCIAL, INC., and its "operating segment", agent, division, subdivision, subsidiary and/or department, GENWORTH LIFE INSURANCE COMPANY OF NEW YORK, that it was in breach of the contract and demanded a cure of that breach and contractual compliance on the part of the defendant.  *(See, Exhibit I, Correspondence of Counsel, Joseph Lanni, Esq., Joseph Lanni, P.C., dated May 16, 2008.)*

67. That on or about May 16, 2008, primary beneficiary NANCY ARCE LAPORTE advised defendant GENWORTH FINANCIAL, INC., and its "operating segment", agent, division, subdivision, subsidiary and/or department,

GENWORTH LIFE INSURANCE COMPANY OF NEW YORK, in pertinent part, of the following:

> "To date, your company has not cited any valid ground set forth within the language of the policy to disclaim coverage or refuse payment of the full death benefits of $500,000.00. In sum, Mrs. LaPorte has entirely complied with the requirements for submitting a claim for the proceeds of this life insurance policy pursuant to both the policy provisions (see, page 1) and the law of the State of New York. It is now the responsibility of your insurance company to meet its obligations under the policy and state law by payment of the full death proceeds."
> . . . . . . . . . . . .
>
> "Please issue a check for $500,000.00 in lump sum payment representing the full proceeds of this life insurance policy made payable to Nancy LaPorte and forward the same to our offices by June 2, 2008. If a decision is made by your insurance company to disclaim coverage under this policy, please advise me in writing and state all grounds for the disclaimer by June 2, 2008. A failure to make payment of the $500,000.00 death proceeds of this life insurance policy by June 2, 2008, by itself will be considered an intentional and bad faith breach of the contractual policy provisions and require us to compel specific performance of your insurance company's contractual obligations and other available remedies."

(See, Exhibit I, Correspondence of Counsel, Joseph Lanni, Esq., Joseph Lanni, P.C., dated May 16, 2008, pp. 1, 4.)

68. That in correspondence dated July 3, 2008, defendant GENWORTH FINANCIAL, INC., and its "operating segment", agent, division, subdivision, subsidiary and/or department, GENWORTH LIFE INSURANCE COMPANY OF NEW YORK, has specifically stated:

> "Our investigation is to validate the information that was provided to us on the application for insurance. A claim decision cannot be rendered for claim benefits until we have received and reviewed all records needed to

complete our evaluation.    Records cannot be requested until the
Authorization for release of information form is received."

*(See, Exhibit J, Correspondence of defendant GENWORTH FINANCIAL, INC.,*
*and GENWORTH LIFE INSURANCE COMPANY OF NEW YORK, dated July 3,*
*2008.)*

69. That from on or about April 15, 2008, to the present time, defendant
GENWORTH FINANCIAL, INC., and/or its "operating segment", agent,
division, subdivision, subsidiary and/or department, GENWORTH LIFE
INSURANCE COMPANY OF NEW YORK, has refused to comply with the
terms of the contract by improperly, intentionally, willfully, inexcusably, and
repeatedly imposing upon primary beneficiary NANCY ARCE LAPORT
conditions for payment of the FIVE HUNDRED THOUSAND and 00/100
DOLLAR ($500,000.00) life insurance policy that are not required by any policy
provision, contractual term, statute, regulation or other legal authority, including
imposing such improper and unauthorized conditions as: (1) signing an
authorization for the decedent's medical records, (2) obtaining an attending
physician's statement, and (3) providing assistance to their claim investigation.

70. That at all times mentioned herein, pursuant to the contract and the applicable law
of the State of New York, primary beneficiary NANCY ARCE LAPORTE was
and is not required to do anything more than comply with the aforementioned
three conditions of submitting to defendant: (1) the original policy, (2) a certified

death certificate, and (3) the written claim form, i.e., "Proof of Loss Claimant's Statement", to properly claim the FIVE HUNDRED THOUSAND and 00/100 DOLLAR ($500,000.00) life insurance proceeds and that there are no other "requirements" that can be permissibly imposed on the primary beneficiary.

71. That at all times mentioned herein, defendant GENWORTH FINANCIAL, INC., and/or its "operating segment", agent, division, subdivision, subsidiary and/or department, GENWORTH LIFE INSURANCE COMPANY OF NEW YORK, was and is not aware of any valid ground under the policy, including "material misrepresentation" or any other ground, to avoid compliance with the contract, to disclaim coverage and/or to refuse to make payment of the FIVE HUNDRED THOUSAND and 00/100 DOLLAR ($500,000.00) life insurance proceeds to primary beneficiary NANCY ARCE LAPORTE.

72. That at all times mentioned herein, predecessor American Mayflower Life Insurance Company of New York, defendant GENWORTH FINANCIAL, INC., and/or its "operating segment", agent, division, subdivision, subsidiary and/or department, GENWORTH LIFE INSURANCE COMPANY OF NEW YORK, failed to investigate and "validate" the statements made on the application for insurance submitted by insured ADAM LAPORTE through use of the "Authorization to Collect and Disclose Information", dated November 1, 2004, prior to agreeing to, entering into and issuance of the contract or during the period November 1, 2004 – November 1, 2006.

73. That the stated purpose of the "investigation" by defendant GENWORTH FINANCIAL, INC., and/or its "operating segment", agent, division, subdivision, subsidiary and/or department, GENWORTH LIFE INSURANCE COMPANY OF NEW YORK, i.e., "to validate the answers given on the application for insurance" is irrelevant to the insured's cause of death, manner of death and the claim made by primary beneficiary NANCY ARCE LAPORTE since the death of insured ADAM LAPORTE is due to massive trauma inflicted injuries (i.e., "fractures of skull, ribs, and upper extremity, lacerations and contusions of brain, lungs and liver"), not as the result of a pre-existing medical condition.

74. That at all times mentioned herein, predecessor American Mayflower Life Insurance Company of New York, defendant GENWORTH FINANCIAL, INC., and/or its "operating segment", agent, division, subdivision, subsidiary and/or department, GENWORTH LIFE INSURANCE COMPANY OF NEW YORK, intentionally and deliberately chose to collect, accept and profit from the life insurance premiums paid by or on behalf of insured ADAM LAPORTE rather than conduct an "investigation" to "validate the answers given on the application for insurance" submitted by insured ADAM LAPORTE through use of the "Authorization to Collect and Disclose Information", dated November 1, 2004, prior to agreeing to, entering into and issuance of the contract or during the period November 1, 2004 – November 1, 2006.

75. That on or about the period November 2004 – March 2008, predecessor American Mayflower Life Insurance Company of New York, defendant GENWORTH FINANCIAL, INC., and/or its "operating segment", agent, division, subdivision, subsidiary and/or department, GENWORTH LIFE INSURANCE COMPANY OF NEW YORK, considered the insured's life insurance application statements to be satisfactory for the purposes of issuing the contract and collecting, accepting and profiting from premium payments.

76. That as a result of the foregoing breach of contract by defendant GENWORTH FINANCIAL, INC., and/or its "operating segment", agent, division, subdivision, subsidiary and/or department, GENWORTH LIFE INSURANCE COMPANY OF NEW YORK, plaintiff NANCY ARCE LAPORTE has been damaged in the sum of FIVE HUNDRED THOUSAND and 00/100 DOLLARS ($500,000.00).

77. That as a result of the foregoing breach of contract by defendant GENWORTH FINANCIAL, INC., and/or its "operating segment", agent, division, subdivision, subsidiary and/or department, GENWORTH LIFE INSURANCE COMPANY OF NEW YORK, plaintiff NANCY ARCE LAPORTE is entitled to attorney's fees, the costs and disbursements of the action, and interest on the value of the contract.

## AS AND FOR A SECOND CAUSE OF ACTION

78. Plaintiff realleges, reiterates and repeats each and every allegation contained in paragraphs 1 through 77 inclusive with the same force and effect as though fully set forth at length herein.

79. That as a result of the foregoing breach of contract by defendant GENWORTH FINANCIAL, INC., and/or its "operating segment", agent, division, subdivision, subsidiary and/or department, GENWORTH LIFE INSURANCE COMPANY OF NEW YORK, plaintiff NANCY ARCE LAPORTE is entitled to an Order and Judgment compelling specific performance of the aforementioned contract in the form of payment of the FIVE HUNDRED THOUSAND and 00/100 DOLLAR ($500,000.00) life insurance policy.

80. That as a result of the foregoing breach of contract by defendant GENWORTH FINANCIAL, INC., and/or its "operating segment", agent, division, subdivision, subsidiary and/or department, GENWORTH LIFE INSURANCE COMPANY OF NEW YORK, plaintiff NANCY ARCE LAPORTE is entitled to attorney's fees, the costs and disbursements of the action, and interest on the value of the contract.

## AS AND FOR A THIRD CAUSE OF ACTION

81. Plaintiff realleges, reiterates and repeats each and every allegation contained in paragraphs 1 through 80 inclusive with the same force and effect as though fully set forth at length herein.

82. That the conduct of defendant GENWORTH FINANCIAL, INC., and/or its "operating segment", agent, division, subdivision, subsidiary and/or department, GENWORTH LIFE INSURANCE COMPANY OF NEW YORK, in relation to the foregoing breach of contract, was and is improper, intentional, willful, inexcusable, unreasonable and in bad faith.

83. That as a result of the foregoing conduct by defendant GENWORTH FINANCIAL, INC., and/or its "operating segment", agent, division, subdivision, subsidiary and/or department, GENWORTH LIFE INSURANCE COMPANY OF NEW YORK, plaintiff NANCY ARCE LAPORTE is entitled to compensatory damages in the amount of FIVE HUNDRED THOUSAND and 00/100 DOLLARS ($500,000.00) and punitive damages in the amount of ONE MILLION, FIVE HUNDRED THOUSAND and 00/100 DOLLARS ($1,500,000.00).

84. That as a result of the foregoing conduct by defendant GENWORTH FINANCIAL, INC., and/or its "operating segment", agent, division, subdivision, subsidiary and/or department, GENWORTH LIFE INSURANCE COMPANY OF NEW YORK, plaintiff NANCY ARCE LAPORTE is entitled to attorney's fees, the costs and disbursements of the action, and interest on the value of the contract.

**WHEREFORE,** plaintiff NANCY ARCE LAPORTE demands judgment against the defendants in the form of: (1) FIVE HUNDRED THOUSAND and 00/100 DOLLARS ($500,000.00) compensatory damages in the first cause of action; (2) specific performance of the contract through an Order and Judgment compelling payment of the FIVE HUNDRED THOUSAND and 00/100 DOLLAR ($500,000.00) life insurance policy in the second cause of action; (3) FIVE HUNDRED THOUSAND and 00/100 DOLLARS ($500,000.00) compensatory damages and ONE MILLION, FIVE HUNDRED THOUSAND and 00/100 DOLLARS ($1,500,000.00) punitive damages in the third cause of action; and (4) liquidated damages, reasonable attorney's fees, the costs and disbursements of the action and the interest on the value of the contract.

Dated: Larchmont, New York
       July 17, 2008

Yours, etc.,

JOSEPH LANNI    (JL 4234)
JOSEPH LANNI, P.C.
Attorneys for Plaintiff
138 Chatsworth Avenue, Suites 6 – 8
Larchmont, New York 10538
Tel.: (914) 834-6600
Fax: (914) 834-0152

TO:

GENWORTH FINANCIAL, INC. (Defendant)
Principal Executive Offices
6620 West Broad St.
Richmond, VA 23230

# EXHIBIT A

## Contract
## Policy Number M 318,962
## (January 26, 2005)

**Here are your insurance documents from**

# American Mayflower Life Insurance Company of New York

*A GE Financial Assurance Company*



*We bring good things to life*

Kenneth L. Ingram, CFP®
*President*

**TermQuote®**

6768 Loop Road
Centerville, Ohio 45459-2161
957.434.8989 / 800.444.8376
FAX 957.434.8903

Here are your insurance documents from

# American Mayflower Life Insurance Company of New York

A GE Financial Assurance Company



 We bring good things to life.

# American Mayflower Life
## INSURANCE COMPANY OF NEW YORK

### A Stock Company

Will pay the Beneficiary the death proceeds as defined in this Policy. Payment will not be made until all of the following have been received at the home office:

- this Policy;
- due proof that the Insured died prior to the Expiry Date while this Policy was in force; and
- a written claim for the death proceeds completed on a form supplied by the Company.

Any payment is subject to the provisions on this page and on the following pages.

The consideration for this Policy is the application and payment of the Total Initial Premium shown in the Schedule on or before policy delivery.

The Owner may return this Policy within 20 days after its delivery by taking it or mailing it to the Company or to any agent of the Company. Immediately upon delivery or mailing, this Policy will be deemed void from the beginning. Any premium paid will be returned.

Signed at the home office at 622 Third Avenue, 33rd Floor, New York, New York on the Date of Issue.

President                                                       Secretary

### TERM LIFE POLICY
**Current Premium Subject to Change
But Will Not Exceed Specified Maximum Premium
Insurance Payable at Death prior to Expiry Date
Nonparticipating - No Dividends**

| | | | |
|---|---|---|---|
| Insured | ADAM LAPORTE | SEE ENDORSEMENT | Policy Date |
| Policy Number | M318,962 | JANUARY 26, 2005 | Date of Issue |

Form No. AM-1420

## GENERAL PROVISIONS

**THE CONTRACT**

The entire contract consists of the following:
- this Policy, including any applicable endorsements and riders;
- the application;
- any supplemental application; and
- any application for reinstatement.

An application includes all sections and forms the Company has designated as parts of the application. The application is evidenced by the copy that was attached to this Policy at issue or delivery. Any supplemental application or application for reinstatement will be evidenced by the copy sent to the Owner for attachment to this Policy following Company approval. For purposes of this section, any applications sent to the Owner will be considered to have been attached to this Policy at issue or delivery.

All statements made in an application are deemed representations and not warranties. No statement will void this Policy or be used in defense of a claim unless it is contained in an application attached to, or considered to have been attached to, this Policy when issued or delivered.

Only the President, a Senior Vice President, or the Secretary of the Company can change or waive any provision of this Policy. Any change or waiver must be made in writing.

**POLICY DATE**

Policy anniversaries, policy years, policy months, and Premium Due Dates are measured from the Policy Date. The first policy year begins on the Policy Date. Subsequent policy years begin on the same date each year thereafter. A policy anniversary occurs at the beginning of each policy year after the first policy year.

The first policy month begins on the Policy Date. Subsequent policy months begin on the same day of the month as the Policy Date.

**OWNER AND BENEFICIARY**

The designations of Owner and Beneficiary are as shown in the application or a notice of change that has been received at the home office in a form acceptable to the Company. The designation of Contingent Owner is as shown in the application or as subsequently elected by the Owner in a written notice received at the home office in a form acceptable to the Company. If the Insured becomes the Owner, any designation of Contingent Owner is void.

The Owner has all rights stated in this Policy. The Owner may amend this Policy during the Insured's lifetime with the Company's consent. The rights of the Owner are subject to the rights of an irrevocable beneficiary.

If the Owner is other than the Insured and the Owner dies during the Insured's lifetime, all rights of the Owner vest in the Contingent Owner, if living or in existence, and the Contingent Owner becomes the Owner. If the Contingent Owner is not alive or not in existence at the Owner's death, all ownership rights vest in the Owner's estate or successors.

The interest of a beneficiary terminates if that beneficiary dies or ceases to exist before the Insured dies. If no beneficiary survives or is in existence at the Insured's death, payment will be made to the Owner or the Owner's estate or successors.

**CHANGE OF OWNER AND BENEFICIARY**

The Owner may change the designations of Owner, Contingent Owner, and Beneficiary during the Insured's lifetime. Any change is subject to the consent of an irrevocable beneficiary. If the designation of Owner is changed, any existing revocable Beneficiary designations and any Contingent Owner designation are automatically revoked; however, any existing irrevocable Beneficiary designation will be revoked only with that Beneficiary's consent.

Written notice of change of the Owner, Contingent Owner, and Beneficiary must be received at the home office in a form acceptable to the Company. The new designation will then take effect as of the date the Owner signed the notice. Such a change does not affect any payment made or other action taken by the Company before the notice is received.

2

# S C H E D U L E

This Policy is a legal contract between the Owner and Amercian Mayflower Life Insurance Company of New York.

**READ YOUR POLICY CAREFULLY.**

### TABLE OF CONTENTS

Page

**Schedule — General Policy Information** ................................................................... 3
**Schedule — Table of Premiums** ........................................................................ 4

**GENERAL PROVISIONS**
    The Contract ....................................................................................... 2
    Policy Date ........................................................................................ 2
    Owner and Beneficiary ........................................................................ 2
    Change of Owner and Beneficiary ........................................................... 2
    Assignment ....................................................................................... 5
    Misstatement ..................................................................................... 5
    Suicide ............................................................................................ 5
    Incontestability ................................................................................... 5
    Payment of Proceeds ........................................................................... 5
    Amount of the Death Proceeds ............................................................... 5
    Nonparticipating ................................................................................ 5

**PREMIUM PROVISIONS**
    Premium Payments ............................................................................. 5
    Refund of Premium ............................................................................ 6
    Grace Period ..................................................................................... 6
    Reinstatement ................................................................................... 6

**CONVERSION PROVISION**
    Conversion Option .............................................................................. 6A

**SETTLEMENT OPTIONS**
    General Provisions .............................................................................. 7
    Death of Payee .................................................................................. 7
    First Installment ................................................................................ 7
    Interest ........................................................................................... 7
    Option 1 — Fixed Period ...................................................................... 7
    Option 2 — Life Income with Installments Certain ...................................... 7
    Option 3 — Interest ............................................................................ 7
    Option 4 — Fixed Installments ............................................................... 7
    Option 5 — Single Premium Annuity ....................................................... 7
    Other Settlement Options ..................................................................... 7
    Option 1 Table .................................................................................. 8
    Option 2 Table .................................................................................. 8


4390020024567011M31B962...012605...

S C H E D U L E

| Benefit | Annual Premium | Premium Period |
|---|---|---|
| Convertible Base Policy | $     385.00* | 20 YEAR(S) |

* Subsequent Current Annual and Maximum Annual Premiums are shown in the Table of Premiums.

Policy Fee - $60.00 annually

Expiry Date JANUARY 26, 2050   (No insurance will be provided under this Policy on or after this date.)

JANUARY 26, 2025    Final Conversion Date

*Premium 26TH DAY OF JANUARY AND JULY
Due Dates OF EACH YEAR

Beneficiary  AS DESIGNATED IN THE                    PREFERRED  Premium
             APPLICATION OR AS SUBSEQUENTLY NO NICOTINE USE  Classification
             CHANGED BY THE OWNER

     Owner   AS DESIGNATED IN THE                              Age Nearest
             APPLICATION OR AS SUBSEQUENTLY         35 M  Birthday
             CHANGED BY THE OWNER

Insured ADAM LAPORTE                    M318,962 Policy Number

Amount Of
   Insurance $500,000        SEE ENDORSEMENT    Policy Date

     Total
Initial Premium $196.35        JANUARY 26, 2005 Date of Issue

*Please note that, if a Premium Due Date falls on the 29th, 30th or 31st of a month that does not contain one of these dates, the premium due date will be the first day of the following month.

Form No. AM-1420-S-20 (1/03)              3

S   H E D U L E  *CONTINUED*    Pol No   M318,962

### Table of Premiums

The Current Annual Premium is that premium which the Company anticipates will be payable on the date shown.  Current Annual Premiums are subject to change but will never exceed the Maximum Annual Premiums shown in this Table.

Once a year the Company will review the Current Annual Premium to determine whether it will change.   Any change in the Current Annual Premium will be based solely on future expectations as to investment earnings, mortality, persistency, expenses and taxes. Any such change will not be done for the purpose of distributing past profits or recouping past losses. Any such change will be applied uniformly to a class of insureds. Class will be determined by 1. issue age and sex 2. premium classification 3. amount of insurance, and 4.  the number of years the insurance has been inforce.

Premiums will not be changed more than once a year.   The Company will mail notice of any change in premium.

Rider premiums are included.

| Policy Yr Beginning | Current Annual Premium | Maximum Annual Premium | Policy Yr Beginning | Current Annual Premium | Maximum Annual Premium |
|---|---|---|---|---|---|
| JANUARY 26 | | | JANUARY 26 | | |
| 2005 $ | 385.00 | 385.00 | 2030 $ | 6,265.00 | 12,700.00 |
| 2006 | 385.00 | 385.00 | 2031 | 6,930.00 | 14,000.00 |
| 2007 | 385.00 | 385.00 | 2032 | 7,790.00 | 15,480.00 |
| 2008 | 385.00 | 385.00 | 2033 | 8,435.00 | 17,170.00 |
| 2009 | 385.00 | 385.00 | 2034 | 9,280.00 | 19,080.00 |
| 2010 | 385.00 | 385.00 | 2035 | 10,210.00 | 21,190.00 |
| 2011 | 385.00 | 385.00 | 2036 | 11,035.00 | 23,460.00 |
| 2012 | 385.00 | 385.00 | 2037 | 12,145.00 | 25,920.00 |
| 2013 | 385.00 | 385.00 | 2038 | 13,130.00 | 28,560.00 |
| 2014 | 385.00 | 385.00 | 2039 | 13,930.00 | 31,440.00 |
| 2015 | 385.00 | 385.00 | 2040 | 15,030.00 | 34,690.00 |
| 2016 | 385.00 | 385.00 | 2041 | 16,485.00 | 38,370.00 |
| 2017 | 385.00 | 385.00 | 2042 | 18,030.00 | 42,620.00 |
| 2018 | 385.00 | 385.00 | 2043 | 20,110.00 | 47,500.00 |
| 2019 | 385.00 | 385.00 | 2044 | 22,435.00 | 52,980.00 |
| 2020 | 385.00 | 385.00 | 2045 | 25,060.00 | 58,860.00 |
| 2021 | 385.00 | 385.00 | 2046 | 28,025.00 | 65,120.00 |
| 2022 | 385.00 | 385.00 | 2047 | 31,380.00 | 71,700.00 |
| 2023 | 385.00 | 385.00 | 2048 | 35,140.00 | 78,530.00 |
| 2024 | 385.00 | 385.00 | 2049 | 39,345.00 | 85,780.00 |
| 2025 | 1,365.00 | 7,880.00 | | | |
| 2026 | 2,345.00 | 8,690.00 | | | |
| 2027 | 3,325.00 | 9,550.00 | | | |
| 2028 | 4,305.00 | 10,480.00 | | | |
| 2029 | 5,285.00 | 11,530.00 | | | |

## GENERAL PROVISIONS (Continued)

**ASSIGNMENT**

The Company is not responsible for the validity or effect of any assignment of this Policy. No assignment will bind the Company until it is received at the home office.

**MISSTATEMENT**

If the Insured's age or sex is misstated, the Company will adjust the proceeds to that amount which the premiums paid would have purchased based on the correct information.

"Attained age" is the age shown in the Schedule plus the number of whole years elapsed from the Policy Date.

**SUICIDE**

If the Insured dies by suicide within two years after the Date of Issue shown in the Schedule, the death proceeds under this Policy will be an amount equal to the premiums paid as of the date of death.

**INCONTESTABILITY**

With respect to statements made in the application, this Policy is not contestable after it has been in force during the Insured's lifetime for a period of two years beginning with the Date of Issue shown in the Schedule. With respect to statements made in an application for reinstatement, this Policy is not contestable after it has been in force during the Insured's lifetime for a period of two years beginning with the date of reinstatement.

This provision does not apply to any rider providing additional benefits.

**PAYMENT OF PROCEEDS**

The proceeds will be paid from the home office. This Policy must be returned to the Company. Unless a settlement option is elected, the proceeds will be paid in one sum.

**AMOUNT OF THE DEATH PROCEEDS**

The proceeds payable at the death of the Insured will be:
- the amount of insurance applicable on the date of the Insured's death; less
- any premium required to keep this Policy in force to the end of the policy month of death.

The portion of the premium paid for the period beyond the end of the policy month of death will be paid in addition to the death proceeds.

The death proceeds will be adjusted due to any of the following:
- a successful contest of this Policy in accordance with the Incontestability section;
- misstatement as explained in the Misstatement section; and
- death during the grace period.

If the Insured dies by suicide, the amount of the death proceeds may be determined in accordance with the Suicide section.

**NONPARTICIPATING**

This Policy does not share in any distribution of surplus. No dividends are payable.

## PREMIUM PROVISIONS

**PREMIUM PAYMENTS**

Premiums are based on the rates in use for the class to which the Insured belongs.

Any premium after the first is payable in advance at the home office or at the Company's premium payment address. Premiums are payable during the Insured's lifetime. The Schedule shows the policy years during which premiums are payable.

The Owner may change the mode of premium payment with the Company's consent. Written notice must be received at the home office. The modes available are annual, semiannual, and quarterly. Premiums may also be paid by automatic bank draft.

**(Continued)**

## PREMIUM PROVISIONS (Continued)

**REFUND OF PREMIUM**

No premium refunds will be made except as specifically stated in this Policy.

**GRACE PERIOD**

Any premium not paid by its Premium Due Date is in default. A grace period of 31 days is provided for payment, without interest, of any premium after the first premium. The Premium Due Date of an unpaid premium will be the first day of the grace period for that premium.

This Policy and all riders will stay in force during a grace period. If this Policy enters a grace period and the Insured dies before the end of the grace period, the premium required to keep this Policy in force to the end of the policy month of death will be deducted from the proceeds.

If a premium has not been paid by the end of its grace period, this Policy will terminate subject to its terms as of the Premium Due Date of that premium.

**REINSTATEMENT**

This Policy may be reinstated unless the date of reinstatement would be on or after the Expiry Date shown in the Schedule.

To reinstate, the following must be received at the home office within five years after default in premium payment:
- evidence of the insurability of the Insured acceptable to the Company; and
- payment of all past-due premiums with interest calculated from their respective Premium Due Dates at a rate of 6.00% per year, compounded annually.

After the Company has approved the application for reinstatement, this Policy will be reinstated on the day the above conditions are satisfied, which is the date of reinstatement.

## CONVERSION PROVISION

**CONVERSION OPTION**  This Policy may be converted to a new policy on or before the Conversion Date shown in the Schedule. Evidence of insurability is not required unless riders are to be included in the new policy.

To convert this Policy, the Owner must provide the following to the home office:
- written request for conversion; and
- this Policy.

The policy date of the new policy will be the date of conversion. The date of conversion is the beginning of the policy month on which conversion is effective.

The new policy may be on any whole life or endowment plan available for this purpose on the date of conversion with a premium per $1,000 higher than the premium per $1,000 for this Policy as of the date of conversion. There will always be at least one plan available for conversion.

The amount of insurance of the new policy:
- may not exceed the amount of insurance under this Policy on the date of conversion; and
- may not be less than the minimum for the plan selected.

Using the rates then in effect for the new policy, premiums for the new policy will be determined using the following:
- the Insured's sex and age nearest birthday on the date of conversion; and
- the premium classification of the new policy.

The new policy will have the same premium classification as this Policy.





## SETTLEMENT OPTIONS

**GENERAL PROVISIONS**

Policy proceeds may be paid in a single sum or left with the Company for payment under one or more of the following settlement options. The amount applied under an option must be at least $2,000. The amount of each payment under an option must be at least $50.

The Owner, with the consent of any irrevocable beneficiary, may elect or revoke a settlement option at any time before the proceeds are payable. If no settlement option election is then in effect, the payee may make an election. Written notice of election or revocation must be filed at the home office in a form acceptable to the Company. The election or revocation will then take effect as of the date the Owner or payee signed the notice. An election does not affect any payment made or other action taken by the Company before the notice is received. A payee that is not a natural person may elect a settlement option only with the Company's consent.

An assignee cannot elect a settlement option. Change of owner or beneficiary automatically revokes any election in effect.

**DEATH OF PAYEE**

Unless otherwise specified, at the death of the last payee a final payment will be made to the payee's estate. For Options 1 and 2, the final payment will be the commuted value of the remaining unpaid installments certain. Such value will be computed based on the rate of interest used in the calculation of the payments. For Options 3 and 4, the final payment will be the unpaid proceeds with any unpaid interest to the date of death of the payee.

**FIRST INSTALLMENT**

The first installment under Options 1, 2, and 4 is payable on the effective date of the option. The effective date is the date of the Insured's death or any other date agreeable with the Company.

**INTEREST**

The guaranteed interest rate for Options 1, 2, 3, and 4 is 2½% a year, compounded annually. Excess interest may be declared annually by the Company.

**OPTION 1 FIXED PERIOD**

Proceeds will be paid for a fixed period. The amount of the payments is determined from the Option 1 Table on the next page.

**OPTION 2 LIFE INCOME WITH INSTALLMENTS CERTAIN**

Proceeds will be paid in equal installments throughout the certain period. After the certain period, payments will continue to be made throughout the payee's lifetime. The amount and certain period of the payments are determined from the Option 2 Table on the next page. At some ages the same amount is payable for different periods certain. In such a case the Company will assume that the longest period was chosen. Satisfactory proof of the payee's age is required. The Company may require evidence that the payee is living on the due date of each payment.

**OPTION 3 INTEREST**

Interest on the proceeds will be paid in the manner agreed upon when the option is elected.

**OPTION 4 FIXED INSTALLMENTS**

Proceeds will be paid in fixed installments at regular intervals until proceeds, together with interest on the unpaid balance, are exhausted.

**OPTION 5 SINGLE PREMIUM ANNUITY**

Proceeds will be used to purchase any single premium annuity the Company offers at the time proceeds are applied. The annuity payments will be 102% of the payments otherwise purchased by the single premium.

**OTHER SETTLEMENT OPTIONS**

Proceeds may be applied in any other mutually agreeable manner.

**(Continued)**

Form No. AM-14203                              7

## SETTLEMENT OPTIONS (Continued)

### OPTION 1 TABLE — Fixed Period Installments
Installments for fixed number of years for each $1,000 of proceeds

| Term of Installment Payments | Annual | Semi-Annual | Quarterly | Monthly | Term of Installment Payments | Annual | Semi-Annual | Quarterly | Monthly | Term of Installment Payments | Annual | Semi-Annual | Quarterly | Monthly |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Years | | | | | Years | | | | | Years | | | | |
| 1 | | $503.09 | $252.32 | $84.28 | 6 | $177.12 | $89.11 | $44.69 | $14.93 | 15 | $78.80 | $39.64 | $19.88 | $6.64 |
| 2 | $506.17 | 254.65 | 127.72 | 42.66 | 7 | 153.65 | 77.30 | 38.77 | 12.95 | 20 | 62.58 | 31.48 | 15.79 | 5.27 |
| 3 | 341.60 | 171.85 | 86.19 | 28.79 | 8 | 136.07 | 68.45 | 34.33 | 11.47 | 25 | 52.95 | 26.64 | 13.36 | 4.46 |
| 4 | 259.33 | 130.47 | 65.44 | 21.86 | 9 | 122.40 | 61.58 | 30.88 | 10.32 | 30 | 46.61 | 23.45 | 11.76 | 3.93 |
| 5 | 210.00 | 105.65 | 52.99 | 17.70 | 10 | 111.47 | 56.08 | 28.13 | 9.38 | | | | | |

### OPTION 2 TABLE - Life Income with Installments Certain
Monthly installments are shown for each $1,000 of proceeds.
Age is age nearest birthday when the first installment is payable.

| Age Male | Age Female | 60 | 120 | 180 | 240 | Age Male | Age Female | 60 | 120 | 180 | 240 | Age Male | Age Female | 60 | 120 | 180 | 240 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 12* | $2.63 | $2.63 | $2.62 | $2.61 | 35 | 40 | $3.40 | $3.39 | $3.36 | $3.33 | 63 | 68 | $6.04 | $5.74 | $5.30 | $4.80 |
| | 13 | 2.64 | 2.64 | 2.63 | 2.63 | 36 | 41 | 3.45 | 3.43 | 3.41 | 3.37 | 64 | 69 | 6.22 | 5.87 | 5.39 | 4.85 |
| | 14 | 2.66 | 2.66 | 2.65 | 2.65 | 37 | 42 | 3.50 | 3.48 | 3.45 | 3.41 | 65 | 70 | 6.40 | 6.01 | 5.48 | 4.90 |
| 10* | 15 | 2.67 | 2.67 | 2.66 | 2.66 | 38 | 43 | 3.55 | 3.53 | 3.50 | 3.45 | 66 | 71 | 6.59 | 6.16 | 5.56 | 4.94 |
| 11 | 16 | 2.69 | 2.69 | 2.68 | 2.68 | 39 | 44 | 3.61 | 3.59 | 3.55 | 3.50 | 67 | 72 | 6.79 | 6.30 | 5.65 | 4.98 |
| 12 | 17 | 2.71 | 2.71 | 2.70 | 2.70 | 40 | 45 | 3.66 | 3.64 | 3.60 | 3.54 | 68 | 73 | 7.00 | 6.45 | 5.73 | 5.02 |
| 13 | 18 | 2.73 | 2.73 | 2.72 | 2.71 | 41 | 46 | 3.72 | 3.70 | 3.65 | 3.59 | 69 | 74 | 7.23 | 6.60 | 5.82 | 5.05 |
| 14 | 19 | 2.74 | 2.74 | 2.74 | 2.73 | 42 | 47 | 3.78 | 3.76 | 3.71 | 3.64 | 70 | 75 | 7.46 | 6.76 | 5.90 | 5.09 |
| 15 | 20 | 2.76 | 2.76 | 2.76 | 2.75 | 43 | 48 | 3.85 | 3.82 | 3.77 | 3.69 | 71 | 76 | 7.70 | 6.91 | 5.97 | 5.12 |
| 16 | 21 | 2.78 | 2.78 | 2.78 | 2.77 | 44 | 49 | 3.92 | 3.88 | 3.82 | 3.74 | 72 | 77 | 7.95 | 7.07 | 6.05 | 5.14 |
| 17 | 22 | 2.81 | 2.81 | 2.80 | 2.79 | 45 | 50 | 3.99 | 3.95 | 3.88 | 3.79 | 73 | 78 | 8.22 | 7.23 | 6.12 | 5.17 |
| 18 | 23 | 2.83 | 2.83 | 2.82 | 2.81 | 46 | 51 | 4.06 | 4.02 | 3.95 | 3.84 | 74 | 79 | 8.50 | 7.38 | 6.18 | 5.19 |
| 19 | 24 | 2.85 | 2.85 | 2.84 | 2.84 | 47 | 52 | 4.14 | 4.09 | 4.01 | 3.90 | 75 | 80 | 8.78 | 7.54 | 6.24 | 5.20 |
| 20 | 25 | 2.88 | 2.88 | 2.87 | 2.86 | 48 | 53 | 4.22 | 4.17 | 4.08 | 3.95 | 76 | 81 | 9.08 | 7.69 | 6.30 | 5.22 |
| 21 | 26 | 2.90 | 2.90 | 2.89 | 2.88 | 49 | 54 | 4.31 | 4.25 | 4.15 | 4.01 | 77 | 82 | 9.40 | 7.84 | 6.35 | 5.23 |
| 22 | 27 | 2.93 | 2.93 | 2.92 | 2.91 | 50 | 55 | 4.40 | 4.33 | 4.22 | 4.07 | 78 | 83 | 9.72 | 7.98 | 6.39 | 5.24 |
| 23 | 28 | 2.95 | 2.95 | 2.94 | 2.93 | 51 | 56 | 4.49 | 4.42 | 4.29 | 4.12 | 79 | 84 | 10.05 | 8.13 | 6.43 | 5.25 |
| 24 | 29 | 2.98 | 2.98 | 2.97 | 2.96 | 52 | 57 | 4.59 | 4.50 | 4.37 | 4.18 | 80 | 85 | 10.39 | 8.26 | 6.47 | 5.26 |
| 25 | 30 | 3.01 | 3.01 | 3.00 | 2.99 | 53 | 58 | 4.69 | 4.60 | 4.44 | 4.24 | and over | and over | | | | |
| 26 | 31 | 3.04 | 3.04 | 3.03 | 3.02 | 54 | 59 | 4.80 | 4.69 | 4.52 | 4.30 | | | | | | |
| 27 | 32 | 3.08 | 3.08 | 3.07 | 3.05 | 55 | 60 | 4.91 | 4.79 | 4.60 | 4.36 | | | | | | |
| 28 | 33 | 3.11 | 3.11 | 3.09 | 3.08 | 56 | 61 | 5.02 | 4.90 | 4.69 | 4.41 | | | | | | |
| 29 | 34 | 3.14 | 3.14 | 3.12 | 3.11 | 57 | 62 | 5.15 | 5.01 | 4.77 | 4.47 | | | | | | |
| 30 | 35 | 3.18 | 3.18 | 3.16 | 3.15 | 58 | 63 | 5.28 | 5.12 | 4.86 | 4.53 | | | | | | |
| 31 | 36 | 3.22 | 3.22 | 3.20 | 3.18 | 59 | 64 | 5.42 | 5.23 | 4.94 | 4.59 | | | | | | |
| 32 | 37 | 3.27 | 3.26 | 3.24 | 3.22 | 60 | 65 | 5.56 | 5.35 | 5.03 | 4.64 | | | | | | |
| 33 | 38 | 3.31 | 3.30 | 3.28 | 3.25 | 61 | 66 | 5.72 | 5.48 | 5.12 | 4.70 | | | | | | |
| 34 | 39 | 3.36 | 3.34 | 3.32 | 3.29 | 62 | 67 | 5.87 | 5.61 | 5.21 | 4.75 | | | | | | |

*Also applies to younger ages

### TERM LIFE POLICY
**Current Premium Subject to Change
But Will Not Exceed Specified Maximum Premium
Insurance Payable at Death prior to Expiry Date
Nonparticipating - No Dividends**

8

# American Mayflower Life

### INSURANCE COMPANY OF NEW YORK

### ENDORSEMENT

The Owner may return this Policy or Contract within 60 days after its delivery by taking it or mailing it to the Company or to the agent through whom it was purchased.  Immediately upon delivery or mailing, this Policy or Contract will be deemed void from the beginning.  Any premium paid will be returned to the Owner.

Form No. AM-9240

# American Mayflower Life

## INSURANCE COMPANY OF NEW YORK
### New York, New York

## ENDORSEMENT

Insured(s):     **ADAM LAPORTE**

Policy Number:     **M318,962**

This Endorsement is made a part of this Policy.

Coverage under this Policy will begin on the date of delivery. The date of delivery is the date on which this Policy is delivered to the Owner and the first modal premium is paid while all persons proposed for insurance are living and insurable as described in each part of the application.

Premiums for this Policy are payable from the Policy Date. The Policy Date will be the same as the date of delivery unless on the date of delivery an Insured's age for insurance purposes would be different from the Age shown in the Schedule. In that case, the Policy Date will be the last day that the Age shown in the Schedule is applicable.

The Company will notify the Owner of the Policy Date by U.S. mail.

All dates referred to in this Policy that depend on the Policy Date will be determined in accordance with this Endorsement.

Secretary

Form No. AM-9248-COD

# Application for Life Insurance – Part I



**American Mayflower Life Insurance Company of New York**
A GE Financial company
Home Office: 200 Old Country Road • Mineola, NY 11501

## 1. Proposed Insured
**Please print all answers.**

| | | |
|---|---|---|
| a. Full Name (First, Middle, Last. Include maiden name in parentheses.) <br> Adam Laporte | b. Sex ○F ●M | c. Date of Birth Mo. Day Yr. 10·21·69 | d. State/Country of Birth NY/USA | e. Social Security Number 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 |

f. Home Address (Number, Street, City, State, and Zip Code). e-mail:
10 Ashley Road  Mahopac, NY  10541

How Long At Address? 1 yr 6 mos. | g. U.S. Citizenship ●Yes No○ If "No," complete Resident Alien Supplement.

h. Any previous addresses within the past 5 years? ○ Yes  No ○  If "Yes," list (Number, Street, City, State and Zip Code):
135-30 83ᴿᴰ Drive, Apt. 5J, Kew Gardens, NY 10541

| i. Driver's License Number/State 559 056 010 NY | j. Marital Status ●M  S○ ○W  D○ | k. Home Phone Number (845) 208-3420 | l. Work Phone Number (212) 337-4608 |

| m. Occupation (Include duties.) Intelligence Analyst-DEA | n. Employer Name and Address U.S. Dept. Justice, 9910ᵗʰ Ave NY, NY 10029 | o. How Long w/ Employer? 5 yrs. 6 mos. |

## 2. Ownership (Complete if Owner is other than Proposed Insured. If trust, give full name of trust and date of trust agreement.)

| a. Owner: (Full Name and Address) e-mail: | b. Rel. to Prop. Ins. | c. SSN or TIN | d. Date of Birth/Trust Mo. Day Yr |
|---|---|---|---|
| | | | |

e. Owner is:  ○ Individual    ○ Partnership    ○ Corporation    ○ Trust    ○ Other (Specify):

| f. Contingent Owner: (Full Name and Address) e-mail: | g. Rel. to Prop. Ins. | h. SSN or TIN | i. Date of Birth/Trust Mo. Day Yr. |
|---|---|---|---|
| | | | |

j. Contingent Owner is:  ○ Individual    ○ Partnership    ○ Corporation    ○ Trust    ○ Other (Specify):

## 3. Beneficiary (If percentage shares are not given, they will be equal. Use REMARKS to name additional Beneficiaries.)

| a. Primary: (Full Name and Address) Nancy Arce-Laporte | b. % Share 100 | c. Rel. to Prop. Ins. Spouse | d. SSN or TIN 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 | e. Date of Birth/Trust Mo. Day Yr. 6/27/68 |
| l. Primary: (Full Name and Address) | g. % Share | h. Rel. to Prop. Ins. | i. SSN or TIN | j. Date of Birth/Trust Mo. Day Yr. |
| k. Contingent: (Full Name and Address) Alyssa Laporte | l. % Share 100 | m. Rel. to Prop. Ins. Child | n. SSN or TIN 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 | o. Date of Birth/Trust Mo. Day Yr. 11/11/03 |
| p. Contingent: (Full Name and Address) | q. % Share | r. Rel. to Prop. Ins. | s. SSN or TIN | t. Date of Birth/Trust Mo. Day Yr. |

## 4. Amount and Plan of Insurance

a. Amount of Insurance: $ 500,000
b. Plan of Insurance: Term 20
c. If underwriting cannot give you the lowest rate for this Plan, will you consider a higher rate?
●Yes  No○

## 5. Death Benefit Option (Universal Life only)

○ Level (Specified Amount only)
○ Increasing (Specified Amount plus cash value)
○ Scheduled increases (if available):
   ○ Simple _____ %  ○ Compound _____ %

## 6. Riders (If available with Plan)

○ Waiver of Premium (term)
○ Waiver of Monthly Deduction (UL)
○ Children's Term Ins.: Units [    ]
○ Other (Amount and Description):

## 7. Premiums

a. Payment Method:  ○ Pre-Arranged Withdrawal (PAW)  ●Direct Bill  ○ Other (Specify):

| b. Payment Mode: Frequency Modal Factor* Annual Percentage Rate* | ○ Monthly (PAW only) .0875 10.8% | ○ Quarterly .26 10.6% | ●Semiannual .51 8.2% | ○ Annual 1.0 0% | ○ Single n/a n/a |

*Information does not apply to universal life plans.

c. Automatic Premium Loan:  | d. Send Premium Notices to:  ☒Insured (Section 1.f.) | e. For Universal Life Plans:  Planned Period Premium: $ _____
(if available) ○ Yes  No○ | ○ Owner (Section 2.a.)  ○ Other (Specify): |  Initial Premium Amount: $ _____

e. Premium Source: ☒Salary  ○ Investments  ○ Savings  ○ Gifts/Inheritance | f. Amount Remitted in Exchange for Temporary Insurance: $ 0
○ Other (Specify):

| Form No. GEFA-599 NY | Page 1 | 5/2002 |

## 8. Proposed Insured's Tobacco and Nicotine Use

a. Mark the one item that best describes your history of tobacco and other nicotine product use:  ☑ Never Used    ○ Totally Stopped    ○ Use Now

b. If you "Use Now," for all that apply, indicate all forms used and the quantity used:  ○ Cigarettes ___ packs/day    ○ Cigars ___ cigars/year
○ Other (describe): _____

c. If you have "Totally Stopped," indicate number of **years** since you totally stopped and give date and reason in **REMARKS**.
○ Less than 1    ○ 1 or more/less than 2    ○ 2 or more/less than 3    ○ 3 or more/less than 5    ○ 5 or more

## 9. Proposed Insured's Insurance Needs (Complete either the Personal or Business section. Explain "Yes" answers in REMARKS.)

a. How long (years) do you plan to maintain this insurance in force? _20_

b. ☑ **Personal:** ☑ Income Replacement    ○ Debt Repayment    ○ Estate Conservation    ○ Other [_____]

  1. Personal Finances:  Gross Annual Income $ *75,000*    Total Assets $ *680,000*  Total Liabilities $ *335,000*

  2. Within the past 5 years, have you filed for bankruptcy or had any judgments or liens filed against you? ........................ ○ Yes No ☑

c. ○ **Business:** ○ Buy-Sell    ○ Key Employee    ○ Secure Credit    ○ Other [_____]

  1. Business Finances:  Total Assets $ [____]    Total Liabilities $ [____]    Net Worth $ [____]

  2. What percentage of the business do you own? [____] %    3. Your Gross Annual Salary (include bonus) $ [____]

  4. Is business insurance applied for or in force on other key members of the business? (Explain either answer in **REMARKS**.) ........ ○ Yes No ○

  5. Within the past 5 years, has the business filed for bankruptcy or had any lien or judgments filed against it? ....................... ○ Yes No ○

## 10. Proposed Insured's Existing Insurance/Replacement (Explain "Yes" answers in REMARKS.)

a. Do you have existing life insurance or annuities? ................................................................. ☑ Yes No ○

b. If "Yes," to Question 10.a, will the insurance applied for in this application replace, end or change any existing life insurance or annuities? ...... ☑ Yes No ○
(If "Yes," you may be required to review and sign additional forms.)

c. If "Yes," to Question 10.a, list all existing life insurance policies and annuity contracts. For additional policies/contracts, use **REMARKS**.

| Full Name of Company | To Be Replaced? | Amount | Year Issued | Beneficiary(ies) |
|---|---|---|---|---|
| *Met Life* | ☑ Yes No ○ | $ *50,000* | *1998* | *Nancy Arce* |
| | ○ Yes No ○ | $ | | |
| | ○ Yes No ○ | $ | | |
| | ○ Yes No ○ | $ | | |

## 11. Proposed Insured's History (Explain "Yes" answers in REMARKS.)

a. Do you have any other application or informal inquiry for life insurance pending in any company or society? ..................... ○ Yes    No ☑

b. Have you ever had an application or reinstatement request for life or disability insurance refused, postponed, limited or cancelled, or have you ever withdrawn an application or been asked to pay a higher premium rate? ...................... ○ Yes    No ☑

c. Have you ever been convicted of a misdemeanor or felony? ....................................................... ○ Yes    No ☑

d. Have you ever requested or received a Worker's Compensation, Social Security or disability income payment, excluding a pregnancy-related payment? ............................................................................ ○ Yes    No ☑

e. In the past 5 years, has your driver's license been suspended or revoked? ........................................ ○ Yes    No ☑

f. In the past 5 years, have you been convicted of, or pled guilty or no contest to, reckless driving or driving under the influence of alcohol or drugs? ..................................................................... ○ Yes    No ☑

g. In the past 5 years have you flown, or do you intend to fly, as a pilot, student pilot, or crew member other than for a scheduled commercial airline? (If "Yes," complete Aviation Supplement.) ...................................... ○ Yes    No ☑

h. In the past 2 years have you engaged in, or do you intend to engage in, hang gliding, ultra-light flying, hot-air ballooning, mountain, rock, or ice climbing, motor vehicle or boat racing, or scuba or sky diving? (If "Yes," complete appropriate activities Supplement(s).) ..................................................................... ○ Yes    No ☑

i. Do you intend to travel or reside outside of the U.S. for more than 4 consecutive weeks? (If "Yes," complete Foreign Residence/Travel Supplement.) .............................................. ○ Yes    No ☑

## 12. REMARKS (For explanations and special requests. Identify applicable item number and letter. If additional space is needed, use an overflow form.)

## Authorization to Collect and Disclose Information

**Information**    Information means facts about the Proposed Insured. It includes facts about these topics: mental and physical health, including facts about communicable diseases such as HIV infection, AIDS, tuberculosis, and sexually transmitted diseases; other insurance coverage; hazardous activities; character; general reputation; mode of living; finances; vocation; and other personal traits. It does not include facts about sexual orientation. Information does not include facts about previously administered tests for HIV Antibodies, T-Cell Counts, or AIDS.

**Source**    Medical physicians; chiropractors; physical therapists; psychologists; drug, alcohol, or mental health counselors; hospitals; clinics; drug or alcohol treatment or consultation facilities; nursing homes; mental health facilities; ambulatory care centers; facilities or offices staffed or run by care providers; insurers; reinsurers; MIB; consumer reporting agencies; financial sources; employers; the Social Security Administration; neighbors; friends; and relatives.

**Insurer**    American Mayflower Life Insurance Company of New York

**Proposed Insured**    The Proposed Insured is the person whose life is proposed to be insured.

**Authorization**    The Authorization is this Authorization to Collect and Disclose Information.

**MIB**    MIB is the medical information bureau known as MIB, Inc.

The following parties may need to collect information in regard to proposed coverage: the Insurer and its reinsurers; MIB; consumer reporting agencies; and all persons authorized to represent these parties. Those parties that may need to collect information may generally disclose information to the following: other insurers to which the Proposed Insured has applied or may apply; reinsurers; MIB; or persons who perform business, professional, or insurance tasks for them. They may disclose information as allowed or required by law. MIB and consumer reporting agencies may disclose information only as set forth in an agreement with a member company or organization. Certain laws may pertain to some kinds of information and may further restrict disclosure of that information. The Insurer and its reinsurers will use information to evaluate the application.

By signing this Application – Part I, the Proposed Insured or the person authorized to act on the Proposed Insured's behalf: (1) authorizes each Source to give information when this Authorization is presented; and (2) acknowledges receipt of the Notice to Proposed Insured and Owner. A copy of this Authorization will be as valid as the original. The Proposed Insured or the person authorized to act on the Proposed Insured's behalf may revoke this Authorization by sending written notice to the Insurer. Failing to sign, changing, or revoking this Authorization will impair processing of the application; as a result, the application may be denied.

This Authorization will be valid for twenty-four (24) months after the date this Application – Part I is signed. The Proposed Insured or an authorized representative of the Proposed Insured may ask to receive a copy of this Authorization. I authorize the Company to procure an investigative consumer report, if required. If a minor child is proposed for coverage, the authorizations, acknowledgements and representations are made by the person authorized (parent or legal guardian) to act on behalf of the minor child named in the application.

## Representations

The application includes the Application – Parts I and II and all approved supplemental forms or amendments the insurer specifically designates as parts of the application by attaching copies of them to any policy delivered to the Owner. No licensed insurance agent is authorized to: (a) make or modify contracts; (b) waive any Insurer rights or requirements; or (c) waive any information the Insurer requests.

I represent: (1) the statements and answers given in the application are true, complete, and correctly recorded to the best of my knowledge and belief; and (2) the insurance being applied for is suitable for the Owner's insurance needs.

I agree that: (1) I will notify the Insurer if any statement or answer given in the application changes prior to policy delivery; and **(2) except as provided in the Temporary Insurance Application and Agreement, if any, insurance will not begin unless all persons proposed for insurance are living and insurable as set forth in the application at the time a policy is delivered to the Owner and the first modal premium is paid.**

State in which
Owner Signed Application _____ NY _____

State in which Policy
will be Delivered _____ NY _____

_____    ___11/1/04___    _____
Signature of Proposed Insured    Date    Owner (if not Proposed Insured: Signature and any Title)

_____    _____
Signature of Parent or Legal Guardian, if applicable    Date

_____    _____
Signature of Licensed Insurance Agent    Signature of Licensed Insurance Agent

KEN INGRAM
_____    _____
Licensed Insurance Agent's Printed Name    Licensed Insurance Agent's Printed Name

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    5466    0452
_____    _____    _____    _____    _____    _____
Social Security No.    License No.    Managing Agency/    Social Security No.    License No.    Managing Agency/
Brokerage No.    Brokerage No.

Form No. GEFA-599 NY    Page 3    5/2002

NEW BUSINESS RECEIVED

# Application – Part II Medical History

**American Mayflower Life Insurance Company of New York**
A GE Financial company
Home Office: 622 Third Avenue, 33rd Floor • New York, NY 10017

Professional health care provider (care provider) means persons licensed as: medical physicians; chiropractors; physical therapists; psychologists; and drug, alcohol, or mental health counselors. Professional health care treatment facility (treatment facility) includes: hospitals; clinics; drug or alcohol treatment or consultation facilities; nursing homes; mental health facilities; ambulatory care centers; and facilities or offices staffed or run by care providers.

## 1. Proposed Insured     *Please print all answers*

| a. Full Name | b. Date of Birth (Mo. Day Yr.) | c. Social Security Number | d. Height | e. Weight |
|---|---|---|---|---|
| ADAM LAPORTE | 10/21/69 | 102 56 4543 | 5 ft 9 in. | 206 lbs. |

## 2. Primary Care Provider (If none, state NONE.)

Name and Address (For the past 5 years, give dates and reasons consulted and any treatments or medications prescribed in DETAILS.)

## 3. Medical Questions (Mark each question separately and fill-in completely. Explain "Yes" Answers in DETAILS.)

a. Have you ever had or do you now have any of the following?

| | Yes No | | Yes No | | Yes No | | Yes No |
|---|---|---|---|---|---|---|---|
| (1) Alcoholism or Drug Use | ○ ☑ | (13) Depression | ○ ☑ | (24) Lupus (SLE)/Scleroderma | ○ ☑ | (36) Shortness of Breath | ○ ☑ |
| (2) Angina | ○ ☑ | (14) Diabetes | ○ ☑ | (25) Mental Illness | ○ ☑ | (37) Skin Disorder | ○ ☑ |
| (3) Asthma | ○ ☑ | (15) Dizziness/Fainting | ○ ☑ | (26) Muscular Dystrophy | ○ ☑ | (38) Sleep Apnea | ○ ☑ |
| (4) Blood Disorder | ○ ☑ | (16) Gastrointestinal Bleeding | ○ ☑ | (27) Neurologic Disorder | ○ ☑ | (39) Stroke | ○ ☑ |
| (5) Bronchitis | ○ ☑ | (17) Headaches | ○ ☑ | (28) Palpitations/Arrhythmia | ○ ☑ | (40) Sugar, Protein, or | |
| (6) Cancer | ○ ☑ | (18) Heart Attack | ○ ☑ | (29) Pancreatitis | ○ ☑ | Blood in Urine | ○ ☑ |
| (7) Chest Pain | ○ ☑ | (19) Heart Murmur | ○ ☑ | (30) Paralysis | ○ ☑ | (41) Suicide Attempt | ○ ☑ |
| (8) Cirrhosis | ○ ☑ | (20) Hepatitis | ○ ☑ | (31) Peripheral Vascular Disease | ○ ☑ | (42) Thyroid Disorder | ○ ☑ |
| (9) Clotting Disorder | ○ ☑ | (21) High Blood Pressure | ○ ☑ | (32) Pituitary Disorder | ○ ☑ | (43) Tuberculosis | ○ ☑ |
| (10) Colitis/Ileitis | ○ ☑ | (22) Human Immunodeficiency | | (33) Prostate Disorder | ○ ☑ | (44) Tumor, Mass or Lump | ○ ☑ |
| (11) Coughing Up of Blood | ○ ☑ | Virus (HIV) Infection | ○ ☑ | (34) Rheumatoid Arthritis | ○ ☑ | (45) Ulcer/Gastritis | ○ ☑ |
| (12) Chronic Lung Disorder | ○ ☑ | (23) Kidney Disorder | ○ ☑ | (35) Seizures/Convulsions | ○ ☑ | | |

b. For reasons other than those given in answering Question 3.a., in the past 5 years have you:

| | Yes No |
|---|---|
| (1) consulted with or received treatment from a care provider or treatment facility? | ☑ ○ |
| (2) had an EKG, X-ray, or other diagnostic test, other than an AIDS-related test? | ☑ ○ |
| (3) been advised to have any diagnostic test, other than an AIDS-related test, hospitalization or surgery that was not completed? | ○ ☑ |
| (4) had medication prescribed for a physical or mental disorder? | ○ ☑ |

c. In the past 6 months, has your weight changed more than 15 pounds? — ○ ☑

d. Other than as prescribed by a physician, have you ever used marijuana, narcotics, stimulants, sedatives, hallucinogens, or any prescription drugs? — ○ ☑
If "Yes," also give name, form, amount, frequency and length of use, and date last used in DETAILS.

e. (1) Mark the one item that best describes your history of alcoholic beverage use.
○ Never Used   ○ Totally Stopped   ☑ Use Now   INFREQUENT
(2) If you have "Totally Stopped," indicate number of years since you totally stopped and give date and reason in DETAILS.
(3) If you "Use Now," answer the following:
(a) How often do you drink alcoholic beverages?   ☑ Occasionally   ○ 3 or less days per week   ○ 4 or more days per week
(b) When you drink, how many drinks do you consume per day?   ☑ 3 or less   ○ 4-6   ○ 7 or more

f. Is there a history of diabetes, cancer, high blood pressure, heart or kidney disease, alcoholism, mental illness, or suicide in your family? — ○ ☑

| Father | Age if Alive: | Age at Death: 64 | Cause UNKNOWN | Siblings | No. Alive | Age(s) | No. Dead: 1 | Age(s): 26 |
|---|---|---|---|---|---|---|---|---|
| Mother | Age if Alive: 64 | Age at Death: _ | Cause _ | 3 | 2 | 25 32 | Cause(s) ACCIDENT | |

## 4. DETAILS (For explanations and requested information. Identify applicable item number and letter. If additional space is needed, use an overflow form.)

State condition and give diagnoses, dates, durations, treatments, tests, medications prescribed and names and addresses of all care providers and treatment facilities.

3B) Dr. Gonzalo. NE-YORK NY performed Lipid Test- Blood Sugar, PSA,
+2
11/04 - all results normal              cholesterol, (Blood wo

NEW BUSINESS
DEC 0 1 2004
RECEIVED

I represent that the statements and answers given in the application are true, complete, and correctly recorded to the best of my knowledge and belief. I agree that: (1) I will notify the Insurer if any statement or answer given in the application changes prior to policy delivery; and (2) except as provided in the Temporary Insurance Application and Agreement, if any, insurance will not begin unless all persons proposed for insurance are living and insurable as set forth in the application at the time a policy is delivered to the Owner and the first modal premium is paid.

| | 11/26/04 | | PBTASCP |
|---|---|---|---|
| Signature of Proposed Insured | Date | Signature of Licensed Agent or Examiner | |

Form No. GEFA-504 NY

MED 5/2002

# EXHIBIT B

## Corrected Death Certificate
## (March 20, 2008)

# DEPARTMENT OF HEALTH
## CERTIFICATE OF DEATH

REGISTER NUMBER: 256

Correction Affid. Filed Date: 3/20/08

NAME: FIRST: Adam

2. SEX: MALE [X]

3A. DATE OF DEATH: 11 09 2006  9:50

4A. PLACE OF DEATH: (Check one) — OTHER [X]

4C. LOCALITY: TOWN [X] Carmel — COUNTY: Putnam

4D: 10 Ashley Road, Mahopac, NY

6. DATE OF BIRTH: 10 21 1969  37  NY

DECEDENT'S EDUCATION: 1989-1997

7A. [X] Yes, Puerto Rican

SOCIAL SECURITY NUMBER: 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

13. MARITAL STATUS: NEVER MARRIED [X]

NAME: Nancy Arce

15A. USUAL OCCUPATION: Intelligence

15C. NAME AND LOCALITY OF COMPANY OR FIRM: U.S. D.E.A.

STATE or COUNTRY: New York — COUNTY: Putnam — TOWN [X] Carmel

16B. STREET AND NUMBER OF RESIDENCE: Ashley Road (Mahopac)  16E. ZIP CODE: 10541  Carmel

FATHER: FIRST: Balentin   LAST: Ramos

MOTHER: FIRST: Elsa   LAST: Rodriguez

19A. NAME OF INFORMANT: Nancy Arce   Mahopac, NY 10541

20A. [X] BURIAL   MONTH 11 DAY 15 YEAR 2006   20B. PLACE OF BURIAL: St. Raymond Cemetery   20C. LOCATION: Bronx, New York

Montera Inc. Westchester Ave   10472   91782

22A. NAME OF FUNERAL DIRECTOR: Paul F. Bradley   22B. SIGNATURE OF FUNERAL DIRECTOR: [signature]

23A. SIGNATURE OF REGISTRAR: [signature] Ann Garvin   23B. DATE: 11 15 2006   24C. BURIAL OR REMOVAL PERMIT ISSUED BY: Ann Garvin   11 3 2006

ITEMS 25 THRU 33 COMPLETED BY CERTIFYING PHYSICIAN — OR — CORONER/PROSTHETIC PHYSICIAN OR MEDICAL EXAMINER

Certifier's name: William J. Stahl   [signature] William J. Stahl   11 09 2006

Certifier's Title: Deputy Medical Examiner   Box 426, Brewster, NY

25E. [signature] Kunjlata Ashar MD Forensic Pathologist   License No.: 137479   [signature] Kunjlata Ashar 11 10 2006

27. MANNER OF DEATH: HOMICIDE [X]

28B. Deceased date pronounced by attending: 11 09 2006  10:00

27C. AUTOPSY: YES [X]

27E. IF YES, WERE FINDINGS USED TO DETERMINE CAUSE OF DEATH? YES [X]

CONFIDENTIAL

(A) fractures of skull, ribs and upper extremity

(B) ... brain, lungs and ...

PART II. OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH:

DID TOBACCO CONTRIBUTE TO DEATH?

I HEREBY CERTIFY THAT THIS IS
A TRUE COPY OF A TRANSCRIPT
FILED IN THE OFFICE OF THE TOWN
CLERK OF THE TOWN OF CARMEL

Amy Harris
3/24/2008

# EXHIBIT C

## Final M.E. Autopsy Report
## (April 3, 2008)

FINAL M.E. AUTOPSY REPORT for LAPORTE, ADAM (PME06-43.2)

# PUTNAM HOSPITAL CENTER
## DEPARTMENT OF PATHOLOGY
Stoneleigh Avenue, Carmel, NY. 10512
Tel: 845-279-5711ext3243 Fax 845-279-2513

# M.E. AUTOPSY REPORT

Patient: LAPORTE, ADAM

DOB: 10 21 1969     Sex: M

Med Rec #: OP29333Acct #: OP2933376

Date/Time Death: 11 09 2006 at 2230

Coroner: William Stahl, PhD

Present at autopsy: Det.Lopiccolo,Det.M.Nagle,P.O.Brian Shay(CPD)

**AUTOPSY #: PME06-43.2**

Date/Time Autopsy: 11 10 2006 at 1515

Pathologist: KUNJLATA ASHAR, MD

Diener: Thomas Tucker

Reported: 04 03 2008

**ANATOMIC DIAGNOSIS:**

I. BLUNT FORCE TRAUMA OF BODY SURFACE.

II. FRACTURES OF SKULL, RIBS AND RIGHT HUMERUS.

III. LACERATIONS OF BRAIN, RIGHT LUNG AND LIVER.

IV. CONTUSIONS OF LUNGS.

V. SUBDURAL AND SUBARACHNOID HEMORRHAGES.

VI. RIGHT HEMOTHORAX.

VII. HEMOPERITONEUM.

VIII. TOXICOLOGY:
SAMPLES OF BLOOD FROM HEART ARE SUBMITTED FOR DRUG AND ALCOHOL ANALYSIS.

CAUSE OF DEATH:
FRACTURES OF SKULL, RIBS AND UPPER EXTREMITIES; LACERATIONS AND CONTUSIONS OF BRAIN, LUNGS AND LIVER.

MANNER OF DEATH:
UNDETERMINED (K.A. - 3/20/08, AS PER DR. STAHL).

HISTOLOGY:
THE TISSUES ARE SAVED.
(kr)

electronically signed

*Kunjlata Ashar MD*

**KUNJLATA ASHAR
MD
(Case signed 04 03 2008)**

M.E. AUTOPSY REPORT

FINAL M.E. AUTOPSY REPORT for LAPORTE, ADAM (PME06-43.2)

# PUTNAM HOSPITAL CENTER
## DEPARTMENT OF PATHOLOGY
Stoneleigh Avenue, Carmel, NY. 10512
Tel: 845-279-5711ext3243 Fax 845-279-2513

## M.E. AUTOPSY REPORT

| | |
|---|---|
| Patient: LAPORTE, ADAM | **AUTOPSY #: PME06-43.2** |
| DOB: 10 21 1969    Sex: M | Date/Time Autopsy: 11 10 2006 at 1515 |
| Med Rec #: OP29333Acct #: OP2933376 | Pathologist: KUNJLATA ASHAR, MD |
| Date/Time Death: 11 09 2006 at 2230 | Diener: Thomas Tucker |
| Coroner: William Stahl, PhD | Reported: 04 03 2008 |
| Present at autopsy: Det.Lopiccolo,Det.M.Nagle,P.O.Brian Shay(CPD) | |

(continued)

M.

E.

A
U
T
O
P
S
Y

R
E
P
O
R
T

FINAL M.E. AUTOPSY REPORT for LAPORTE, ADAM (PME06-43.2)

## PUTNAM HOSPITAL CENTER
### DEPARTMENT OF PATHOLOGY
Stoneleigh Avenue, Carmel, NY. 10512
Tel: 845-279-5711ext3243 Fax 845-279-2513

## M.E. AUTOPSY REPORT

Patient: LAPORTE, ADAM

DOB: 10 21 1969    Sex: M

Med Rec #: OP29333Acct #: OP2933376

Date/Time Death: 11 09 2006 at 2230

Coroner: William Stahl, PhD

Present at autopsy: Det.Lopiccolo,Det.M.Nagle,P.O.Brian Shav(CPD)

**AUTOPSY #: PME06-43:2**

Date/Time Autopsy: 11 10 2006 at 1515

Pathologist: KUNJLATA ASHAR, MD

Diener: Thomas Tucker

Reported: 04 03 2008

**electronically signed**

## GROSS DESCRIPTION
### EXTERNAL DESCRIPTION:
The body is received clad in a checkered shirt and blue shorts. The body is that of a well developed, swarthy complexion, slightly obese male measuring 68 inches in height, weighing approximately 210 pounds and appears to be stated age of 37 years. The body is cold and has full rigidity. Non-blanching, purplish-red lividity is present on the back. The scalp hair is black. The right side of the head appears depressed. The eyes show equal, round pupils measuring 5 mm in diameter, brown irides and pale conjunctivae without petechial hemorrhages. The right external auditory meatus contains blood. The left external auditory meatus and earlobes are unremarkable. The teeth are natural. The neck shows centrally located trachea and is free of trauma or deformity. The chest is well expanded and is symmetrical. The abdomen is slightly protuberant. The external genitalia are those of an adult male. The foreskin is long. Both lower extremities are free of deformity. There is deformity of right elbow. Fracture of lower end of right humerus is noted on inspection and palpation. No needle tract marks are evident. The back shows normal curvature.

The following injuries are seen on the body:
-The right side of the forehead reveals red abrasions over a 2 x 2 inch area. The right frontal region has a 1 1/2 inch long laceration. The right parietal region has a 1/2 inch laceration. Blood is present in both nostrils. The top and back of the right shoulder reveals red abrasions over a 3 x 2 1/2 inch area. Multiple red abrasions are present on the dorsum of both feet measuring up to 1 inch in greatest dimension. The back of the right elbow has a red abrasion measuring 2 x 1 1/2 inches.

### PRIMARY INCISION:
The body is opened by the usual Y-shaped, thoracoabdominal incision. The abdominal pannus measures up to 1 1/2 inches in thickness. The left pleural cavity and pericardial sac are free of excess fluid or adhesions. The right pleural cavity contains about 700 cc of liquid blood. Under the right dome of the diaphragm is about 30 cc of blood. All the abdominal viscera are in their usual anatomical site. The vermiform appendix is present.

### CENTRAL NERVOUS SYSTEM:
The scalp is reflected by the usual intermastoid coronal incision. The soft tissues of the scalp in the right frontal and right temporal region reveals hemorrhage over a 6 x 4 inch area. There are multiple fractures of the entire skull with separation of bone fragments. The dura over the undersurface of frontal lobes is lacerated. The brain weighs 1,320 grams. The undersurface of both frontal lobes reveals laceration measuring up to 1 inch in greatest dimension. Approximately 1-2 cc of blood is present in the left subdural space. Focal patchy subarachnoid hemorrhage is seen over both parietal lobes. The sulci and gyri are unremarkable. No other lesions are seen within the brain parenchyma. The cerebellum, midbrain, pons and medulla are unremarkable. The blood vessels at the base of the brain are thin-walled and widely patent.

The tectorial membrane is incised and no hemorrhage is seen in the ligaments. There is no hemorrhage in the anterior paraspinal muscles. The cervical spine is intact on inspection and palpation.

M.
E.
A
U
T
O
P
S
Y
R
E
P
O
R
T

FINAL M.E. AUTOPSY REPORT for LAPORTE, ADAM (PME06-43.2)

## PUTNAM HOSPITAL CENTER
### DEPARTMENT OF PATHOLOGY
Stoneleigh Avenue, Carmel, NY, 10512
Tel: 845-279-5711ext3243 Fax 845-279-2513

## M.E. AUTOPSY REPORT

Patient: LAPORTE, ADAM

DOB: 10 21 1969     Sex: M

Med Rec #: OP29333    Acct #: OP2933376

Date/Time Death: 11 09 2006 at 2230

Coroner: William Stahl, PhD

Present at autopsy: Det.Lopiccolo,Det.M.Nagle,P.O.Brian Shav(CPD)

### AUTOPSY #: PME06-43.2

Date/Time Autopsy: 11 10 2006at 1515

Pathologist: KUNJLATA ASHAR, MD

Diener: Thomas Tucker

Reported: 04 03 2008

M . E . A U T O P S Y   R E P O R T

## GROSS DESCRIPTION(continued)

### CARDIOVASCULAR SYSTEM:
The heart weighs 360 grams. The epicardium contains the usual amount of adipose tissue. There is no dilatation of chambers. The valves are soft and pliable. The measurements of the valvular circumferences are as follows: tricuspid - 12 cm, pulmonic – 7 cm, mitral - 10.3 cm and aortic - 6.5 cm. The endocardium is smooth and glistening. The myocardium is brown and meaty. The right ventricle is 0.3 cm in thickness while the left ventricle is 1.5 cm in thickness. The coronary ostia are widely patent. The coronary arteries are normal in distribution, thin-walled and widely patent. The aorta and its major branches have smooth, elastic walls. The inferior vena cava is unremarkable.

### NECK ORGANS:
The hyoid bone and thyroid cartilages are intact. The strap muscles are free of hemorrhage. The thyroid is of usual adult size and has brown colloidal parenchyma. The laryngeal and tracheal mucosa is unremarkable. No foreign material is present in their lumina.

### RESPIRATORY SYSTEM:
The left lung weighs 340 grams while the right lung weighs 350 grams. Numerous contusions involve all the lobes of lungs measuring up to 1 inch in greatest dimension. There is a 3 inch laceration of lower lobe of the right lung. The rest of the lung parenchyma is greyish-red and soft. The bronchi and pulmonary arteries are patent.

### GASTROINTESTINAL SYSTEM:
The esophagus is lined by intact mucosa. The stomach contains about 200 cc of yellow-tan, mushy material. No food particles are identified. The gastric mucosa is intact and shows the usual rugal pattern. The duodenum is free of ulceration. The jejunum, ileum and large intestines are unremarkable. The vermiform appendix is present.

### HEPATOBILIARY SYSTEM:
The liver weighs 1,480 grams. The superior aspect of the right lobe of liver reveals several linear lacerations measuring up to 4 inches in length and 1 inch in depth. The rest of the liver parenchyma shows preserved lobular architecture, is brown and is of usual consistency. The gallbladder contains about 20 cc of bile. The gallbladder mucosa is green and velvety.

### SPLEEN:
The spleen weighs 160 grams. Its capsule is smooth and glistening. The cut surface is dark purplish-red and shows the usual trabecular and follicular pattern.

### PANCREAS:
The pancreas lies in the usual anatomical site, is of usual adult size and has tan, lobular parenchyma.

### ADRENALS:
The adrenal lie in their usual anatomical site, are of usual adult size and have golden yellow cortices and brownish medulla.

FINAL M.E. AUTOPSY REPORT for LAPORTE, ADAM (PME06-43.2)

## PUTNAM HOSPITAL CENTER
### DEPARTMENT OF PATHOLOGY
Stoneleigh Avenue, Carmel, NY. 10512
Tel: 845-279-5711ext3243 Fax 845-279-2513

## M.E. AUTOPSY REPORT

Patient: LAPORTE, ADAM

DOB: 10 21 1969     Sex: M

Med Rec #: OP29333Acct #: OP2933376

Date/Time Death: 11 09 2006 at 2230

Coroner: William Stahl, PhD

Present at autopsy: Det.Lopiccolo,Det.M.Nagle,P.O.Brian Shay(CPD)

### AUTOPSY #: PME06-43.2

Date/Time Autopsy: 11 10 2006 at 1515

Pathologist: KUNJLATA ASHAR, MD

Diener: Thomas Tucker

Reported: 04 03 2008

### GROSS DESCRIPTION(continued)

<u>GENITOURINARY SYSTEM:</u>
Each kidney weighs 140 grams. Their capsules strip with ease. The cortical surfaces are smooth. The corticomedullary junction is well delineated. The calyces, pelves and ureters are patent. The urinary bladder contains about 50 cc of urine. The urinary bladder mucosa is unremarkable. The prostate is of usual adult size and is grossly unremarkable. The testes are descended in the scrotum. Their cut surfaces are tan. The seminiferous tubules can be strung out with ease.

<u>MUSCULOSKELETAL SYSTEM:</u>
The muscles are well developed.  Fractures of skull and right humerus are described above.  Bilateral rib fractures are present:  right 6th rib is fractured in midclavicular line while the right 8th and 9th ribs are fractured in the paraspinal location.  The left 3rd through 7th ribs are fractured in midclavicular line.  The soft tissues and muscles surrounding above mentioned fractured sites reveal hemorrhage.  All other bones are intact on inspection and palpation.

<u>LYMPHATIC SYSTEM:</u>
There is no evidence of lymphadenopathy.

KA/kr

M
.
E
.
.
A
U
T
O
P
S
Y

R
E
P
O
R
T

DEC-04-06   13:15    FROM-NMS LABS                         215 366 1601          T-122  P.002/003  F-721

 **NMS**

**NMS Labs**
3701 Welsh Road, PO Box 433A, Willow Grove, PA 19090-0437
Phone: (215) 657-4900 Fax: (215) 657-2972
e-mail: nms@nmslabs.com
Robert A. Middleberg, PhD, DABFT, DABCC, Laboratory Director

**CONFIDENTIAL**

December 4; 2006

TO:    10001
       Putnam County Coroner's Office
       Attn: Dr. William S. Stahl
       PO Box 426
       Brewster, NY  10509

**TOXICOLOGY REPORT OF:**    **LAPORTE, Adam**                        37/M
   NMS Workorder No:    06642572
   NMS Control No:    10665653
   Client ID No:    P06-43 (A06-43)

**SPECIMENS:**    Four gray vials (one containing ~ 3.5 mL of cardiac blood and three each containing ~ 3 mL of cardiac blood) and two red top tubes each containing ~ 8 mL of blood were received on 11/14/06.

**EXAMINATION:**    Analysis Requested – Panel 8102B – Autopsy Toxicology Therapeutic and Abused Drug Screen

**FINDINGS:**

Blood

   QUETIAPINE                                    ~ 70 nanog/mL
   (by GC/MS)

   QUETIAPINE METABOLITE                          Positive
   (by GC/MS)

Other than the above findings, examination of the specimens submitted did not reveal any positive findings of toxicological significance by procedures outlined in the accompanying Analysis Summary.

**COMMENTS:**

Quetiapine (Seroquel®) is an antipsychotic compound approved by the FDA for the management of the manifestations of psychotic disorders, including schizophrenia, it is a structural analogue of clozapine that addresses the positive and negative symptoms of schizophrenia, but does so with few of the traditional side effects of conventional or other atypical antipsychotic medications.

Steady state peak (1.0 to 1.5 hours) plasma levels following a TID daily regimen:

| DOSE (mg/Day) | MEAN MAX. Concentration (nanog/mL) |
|---|---|
| 225 | 286 |
| 450 | 598 |
| 750 | 828 |

The plasma half-life is approximately 6 hours.

## C O N F I D E N T I A L

NMS Workorder No:    06642572
NMS Control No:      10665653
Client ID No:        F06-43 (A06-43)
Page 2 of 2

After an apparent quetiapine overdose in one death, a postmortem blood concentration of 170,000 nanog/mL was reported. In a case of suicide with quetiapine and 4 other drugs, postmortem cardiac blood contained 49,000 nanog/mL of quetiapine.

Respectfully,

Edward J. Barbieri, Ph.D.
Forensic Toxicologist

EJB/lmm

This analysis was performed under chain of custody. The chain of custody documentation is on file at NMS Labs.

Unless alternate arrangements are made by you, the remainder of the submitted specimens will be discarded six (6) weeks from the date of this report; and generated data will be discarded five (5) years from the date of this report.

**** **** ANALYSIS SUMMARY **** ****

### 8102B - Therapeutic and Abused Drug Screen

Test No. 8102B – Drug Screen by Enzyme-Linked Immunosorbent Assay (ELISA) on Blood for: Amphetamine, Barbiturates, Benzodiazepines, Benzoylecgonine (Cocaine), Cannabinoids (Marihuana), Methamphetamine, Opiates and Phencyclidine (PCP); Headspace Gas Chromatography for Ethanol, Methanol, Acetone and Isopropyl Alcohol.

Test No. 8102B - Drug Screen II- Gas Chromatography and Gas Chromatography/Mass Spectrometry Analysis on Blood:

The following is a general list of compound classes included in the Gas Chromatographic screen. Other specific compounds outside these classes are also included. Please note that not all known compounds included in each specified class or heading are included. The detection of any particular compound is concentration-dependent. For a detailed list of all compounds included in this screen, please contact NMS Labs.

Analgesics (opioid and non-opioid), Anesthetics, Antiasthmatic Agents, Anticholinergic Agents, Anticonvulsant Agents, Antidepressants, Antiemetic Agents, Antihistamines, Antiparkinsonian Agents, Antipsychotic Agents, Antitussive Agents, Anxiolytics (Benzodiazepine and others), Cardiovascular Agents (non-digitalis), Hallucinogens, Hypnosedatives (Barbiturate and others), Muscle Relaxants, Non-Steroidal Anti-Inflammatory Agents (excluding Salicylate) and Stimulants (Amphetamine-like and others).

Test No. 8102B - Colorimetric Analysis on Blood for: Salicylates and Acetaminophen.

* * * * END OF REPORT * * * * *

# EXHIBIT D

# Proof of Loss Claimant's Statement



**Genworth**
Financial

Genworth Life & Annuity
Genworth Life
Genworth Life of New York
P.O. Box 10718
Lynchburg, VA 24506-0718
Tel: 888 325.5433

# Proof of loss claimant statement
Life insurance
from Genworth Life and Annuity Insurance Company, Genworth Life Insurance Company and Genworth Life Insurance Company of New York[†]

Page 1 of 11

- Complete this form to request life insurance benefit payment
- Submit the following documents so we can process your claim
  - The entire original policy (If the original is lost, a signed Proof of loss claimant statement will allow us to begin processing)
  - A separate claimant statement for each beneficiary
  - An original, raised seal certified death certificate indicating the insured's cause of death
  - Authorization for release of information
  - Proof of loss physician statement
- Other documents may be required depending on the specific circumstances of your claim
- See pages 10 and 11 for frequently asked questions concerning claims (If you have additional questions, please contact us before completing the claimant statement and sending any information)
- **Please print clearly** using blue or black ink, cross through **any mistakes** (do not use correction fluid) **and initial any corrections**, or we may not be able to process your claim

## Special claimant information and signing in capacity instructions

The following Special claimant information provides details regarding form completion requirements for certain claimant types, and specific circumstances that require additional documentation. The Signing in capacity sections provide instructions regarding which "capacity" or "title" should be included with the claimant's signature on page 7.

**Trust**
- **Claimant information:** Complete this section with the Trust's information, providing the trust's name and date of trust in the "Name" field (e.g., Jane Marie Doe Trust, trust date)
- Complete the "Trustee information" section on page 3 and list all current Trustees
- Provide a Tax Identification Number (TIN) for the Trust for tax reporting purposes
- **Signing in capacity:** The trustee(s) must sign and check either the "Sole trustee" or "Co-trustee" selection as appropriate, and have each current trustee sign unless the trust document confers on one trustee the authority to act alone

**Estate of insured**
- **Claimant information:** Complete this section with the estate's information, providing the estate name in the "Name" field (e.g., Estate of Jane Marie Doe)
- Provide a Tax Identification Number (TIN) for the Estate for tax reporting purposes
- **Signing in capacity:** Sign and check either the "Personal representative," "Administrator" or "Executor/executrix" selection as appropriate
- Submit a copy of the Letters of Administration/Testamentary or other court document appointing the estate's Personal Representative
- **Important Note – Small Estates:** The estate may qualify as a "small estate" under the Small Estate statute or another similar statute of the decedent's state of residence. If the estate qualifies as a "small estate," we require a copy of the properly prepared affidavit or other form required by the state. State laws vary. Please consult your attorney or tax advisor for more information on "small estates."

**Corporation**
- **Claimant information:** Complete this section with the corporation's information, providing the corporation name in the "Name" field (e.g., ABC Corporation)
- **Signing in capacity:** Sign and check the "Other" selection, and write-in the title by which you are authorized to act on behalf of the company (e.g., Name: Jane Marie Doe, Capacity: ABC Corporation President)

**Partnership**
- **Claimant information:** Complete this section with the partnership's information, providing the partnership name in the "Name" field (e.g., ABC Partnership)
- **Signing in capacity:** All partners must sign, or the general or managing partner must sign, and check the "Other" selection and write-in their capacity as Managing Partner or Partner as appropriate

**Minor/child**

**Reminder:** the custodian of the minor's "person" is not necessarily the custodian of the minor's estate/property.

- **Claimant information:** Complete this section with the minor's information, providing the minor's name in the "Name" field (e.g., Jane Marie Doe, minor)
- Submit a copy of the court document appointing the custodian of the minor child's property/estate (not required if claiming under the Uniform Transfer/Gifts to Minor's Act (UTMA))
- **Signing in capacity:** Sign and check the "Custodian" selection, and write-in the capacity as, "Custodian for the property/estate of Jane Doe, minor," or if completing the Proof of loss claimant statement as Custodian under the UTMA indicate relationship (father, mother, etc.) as "Custodian of (name of child) under the (name of resident state) Uniform Transfers/Gifts to Minor's Act"

44119CON 111607

[†]Only Genworth Life Insurance Company of New York is licensed in New York.

Proof of loss claimant statement – life insurance

Page 2 of 11

**Decedent information** *The person who has died*

Name *First, Middle, Last*
ADAM LAPORTE

Maiden name *If applicable*        Other names by which the deceased was known
n/a                                n/a

Address *Residence at time of death*
10 Ashley Rd

City                               State        Zip
Mahopac                            NY           10541

If manner of death was other than "Natural," please describe circumstances on a separate sheet and attach any relevant newspaper clippings.

Date of birth    Place of birth          Date of death
10/21/69         New York NY            11/09/06

Manner of death *Select one*  "undetermined circumstances"
○ Natural   ○ Accidental   ○ Suicide   ○ Homicide

If death was the result of natural causes, provide date symptoms of last illness began
See, certificate of death & final autopsy report

Date deceased first consulted a physician regarding last illness
see, certificate of death & final autopsy report

Last employer of deceased          Occupation    Date last worked
U.S. Drug Enforcement Admin.       Analyst       Feb. '06

**Nicotine use**

In the five years prior to the Date of Death, did the Deceased use any form of nicotine?
○ Yes        ○ No

**Physician information**

For each physician who attended the deceased within the last five years prior to death, please provide their name, address, dates of treatment and illness or condition treated

Name *First, Middle, Last*          Dates of treatment
Richard H. McCarthy M.D.           4/06 - 11/06

Address
19 Herbert Ave.

City                               State        Zip
White Plains                       NY           10606

Illness or condition treated poss. bipolar disorder, manic'd psychotic features
(psychiatric illness (exact diagnoses unclear to claimant)

Name *First, Middle, Last*          Dates of treatment

Address

City                               State        Zip

Illness or condition treated

*Other health care providers + physicians seen w/in 5 years prior to death unknown at present.*

Name *First, Middle, Last*          Dates of treatment

Address

City                               State        Zip

Illness or condition treated

\* *All responses by beneficiary made pursuant to her present personal knowledge + independent recollection.*

## Proof of loss claimant statement - life insurance

Page 3 of 11

### Policy information

| | | | |
|---|---|---|---|
| List all policies under which you (the claimant) are making a claim. | Policy number M318962 | | Amount of insurance $ 500,000.00 |
| Attach a separate sheet if more space is required for additional policy information. | Policy number n/a | | Amount of insurance $ n/a |
| | If policy is lost, misplaced, destroyed or not submitted, please explain. | | |

List other companies, dates of policies and amounts of insurance for life and/or health policies under which the deceased was covered

| Company n/a | Policy dated | Amount of insurance $ |
|---|---|---|
| Company | Policy dated | Amount of insurance $ |
| Company | Policy dated | Amount of insurance $ |

### Claimant information

If claimant is not an individual, refer to Special claimant information and signing in capacity instructions on page 1.

If claimant is a trust, also complete the Trustee Information below.

Federal Income Tax withholding is optional unless subject to backup withholding. If no amount is indicated, the percentage will be 0.

IRS Form 712 is an attachment to insured's Estate Tax Return.

| Name-First, Middle, Last Nancy Gree LaPorte | Social security/Tax ID number 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 |
|---|---|
| Address 10 Ashley Rd | Phone number 845-208-3170 |
| City Mahopac | State NY  Zip 10541 |
| Date of birth 6/27/68 | Age 39  Relationship to deceased Spouse |

Amount or percent claimed *Fill in one* $ 500,000  or 100 %   Citizenship *Select one and provide country if "Other"* ● US  ○ Other _____

Amount to be withheld for Federal Income Tax purposes from any interest payable 0 %

Do you require an IRS Form 712?   ○ Yes   ● No

### Payment mailing address

Provide the address to which payment(s) should be sent if different from the claimant address provided above.

| Address ( Same as above ) | | |
|---|---|---|
| City | State | Zip |

### Trustee information

Complete this section only if the claimant is a trust.

List all current trustees.

Attach a separate sheet if more space is required for additional trustee names.

Indicate capacity of each trustee: Sole Current Trustee or Co-Trustee as appropriate and have each current trustee sign on page 7 unless the trust document confers on one trustee the authority to act alone.

| Trust name | Tax Identification Number (TIN) |
|---|---|
| Date of trust agreement | Amendment dates *If any* |
| State in which trust was established | |
| Current trustee name(s) *Do not list any former trustees* | |

## Proof of loss claimant statement - life insurance

Page 4 of 11

**Settlement options** *Choose and complete one of the settlement options below and on page 5*

| | |
|---|---|
| The claimant is referred to as "you" and "your" in this Proof of loss claimant statement. | As a named beneficiary, you may choose from a variety of options. Before selecting a settlement option, however, we strongly recommend that you consult a tax advisor to discuss potential tax consequences. If you have specific questions about any of these options, you may contact our product specialists at 888 882.2276. |

**1. Interest settlement option - Secure Access Account**

| | |
|---|---|
| Residents of FL, KS, MI, NV, NC, ND, NY and VA must positively elect a SAA in order to receive it. | The Secure Access Account (SAA) program is available to residents of all states except Vermont. If your actual lump sum distribution equals or exceeds $10,000, we will automatically credit your distribution to a SAA unless you specifically chose the Annuity income option or Lump sum option, or if applicable state law first requires a positive election.<br>○ **Yes, credit my distribution to a SAA** *Check here to positively elect a SAA* |

**2. Annuity income option**

Select appropriate payment option, annuity payment details and broker selection.

These options provide a series of fixed payments. Once payments begin, they cannot be changed.

| Payment options *Select one* | Payment option details |
|---|---|
| ○ **2a.** Payments for _____ years* *Indicate number of years, minimum five years / maximum 30 years* | **2a:** You will receive payments for the number of years you select, not to exceed your life expectancy. Payments are guaranteed even if you die before the designated period ends. At your death, any remaining payments will be made to your designated beneficiary. Make your beneficiary designation(s) in the Beneficiary information section on page 5. |
| ○ **2b.** Payments for as long as you live, guaranteed for _____ years* *Indicate number of years, minimum five years / maximum 30 years* | **2b:** You will receive payments for as long as you live with payments guaranteed for the number of years you select, not to exceed your life expectancy. If you die before the Guarantee Period ends, any remaining payments will be made to your designated beneficiary. Make your beneficiary designation(s) in the Beneficiary information section on page 5 and attach a copy of your birth certificate or valid driver's license to the claim form. |
| ○ **2c.** Payments for as long as you live *Payments stop at time of your death* | **2c:** You will receive payments for as long as you live. Payments will end at your death with no provision for beneficiaries. Attach a copy of your birth certificate or valid driver's license to the claim form. |
| ○ **2d.** Equal monthly payments made to two payees (the claimant and the additional payee indicated below) while either is living for a guaranteed minimum of five years | **2d:** Under this option, equal monthly payments will be made to two payees while either is living for a guaranteed minimum of five years. Be sure to provide the name, relationship, date of birth, social security number and address of the second payee. |

*\* Complete the Beneficiary information on page 5 if you choose Payment options 2a or 2b.*

| Additional payee name | Relationship to claimant |
|---|---|
| Date of birth | Social Security number |
| Address | |
| City | State     Zip |

## Proof of loss claimant statement – life insurance

Page 5 of 11

## Settlement options *Continued*

**2. Annuity income option** *Continued*

For **Payment frequency**,
- Monthly = 12 per year
- Quarterly = 4 per year
- Semi-annually = 2 per year
- Annually = 1 per year

EFT payment requests require completion of the EFT section on page 6.

Payments can begin as early as 30 days after the claim is deemed payable. If we receive your request less than 30 days before your scheduled start date, payments will begin the following month.

**Annuity payment details** *Payment to the claimant*

Payment frequency *Select one*
○ Monthly          ○ Quarterly          ○ Semi-annually          ○ Annually

Payment method *Select one*
○ Check          ○ Electronic funds transfer (EFT)

Requested payment start date
*Must be 1st or 15th of month and within one year of deceased's death* ·          /          /

**Broker selection** *Select one of the following to service your settlement option*
○ Current broker for this contract *Provide name* _____
○ Another broker *Provide name* ·
○ You do not want a broker to be allowed to service this option

---

**3. Lump sum option**          ● **Check here to request settlement of the entire amount available in a check format**

*Lump sum payment requested*

## Beneficiary designation

Complete this section only if you selected Payment options 2a or 2b on page 4.

Designation percentages must total 100% for each beneficiary type. If no percentage is provided, proceeds will be divided equally among all surviving beneficiaries.

Attach a separate signed and dated sheet that includes all required information if more space is needed for additional beneficiaries.

| Name or designation | Beneficiary type | Percentage |
|---|---|---|
| · | ☑ Primary · | % |
| Social Security/Tax ID number · | Date of birth · | Relationship to claimant · |
| Address · | | |
| City · | State · | Zip · |

| Name or designation | Beneficiary type | Percentage |
|---|---|---|
| · | ○ Primary ·    ○ Contingent · | % |
| Social Security/Tax ID number · | Date of birth · | Relationship to claimant · |
| Address · | | |
| City · | State · | Zip · |

| Name or designation | Beneficiary type | Percentage |
|---|---|---|
| · | ○ Primary ·    ○ Contingent · | % |
| Social Security/Tax ID number · | Date of birth · | Relationship to claimant · |
| Address · | | |
| City · | State · | Zip · |

| Name or designation | Beneficiary type | Percentage |
|---|---|---|
| · | ○ Primary ·    ○ Contingent · | % |
| Social Security/Tax ID number · | Date of birth · | Relationship to claimant · |
| Address · | | |
| City · | State · | Zip · |

## Proof of loss claimant statement – life insurance

Page 6 of 11

**Electronic Funds Transfer (EFT) information**

*Complete this section and attach a **voided** check to authorize EFT payments.*

Account owner name        Institution name for deposit

Routing number      | | | | | | | | |    Type of account *Select one*
         ○ Checking    ○ Savings    ○ Brokerage

Account number for deposit | | | | | | | | | | | | | | |

**If brokerage account, provide additional information below**

Brokerage firm            Brokerage account number

Brokerage name           Brokerage phone number

This is an example of a personal check. A business check may be different.

If you are a Trustee, Attorney-in-Fact, Guardian, Conservator or other fiduciary or representative, you must sign in capacity or with title (e.g., Jane Doe, Trustee) and attach relevant legal documentation.

Beneficiary must be account owner.

By signing below, you authorize us to automatically transfer payments into your account, and make any necessary adjustments to your account, with the understanding that you or your agent will be notified. This authorization will remain in effect until we receive written notification from you to do otherwise.

Beneficiary signature              Date

**X**

## Proof of loss claimant statement – life insurance

Page 7 of 11

### Declaration and signature(s)

The Genworth Financial companies listed at the top of page 1 are referred to as "us," "our" and "we" in this section.

The claimant is referred to as "you" and "your" in this section.

By signing below, you
* Make claim to the proceeds and declare that you have the authority to claim in the capacity you have indicated
* Declare that all answers recorded in this proof of loss claimant's statement are true and complete
* Declare the original and any duplicates or certificates of each policy listed in the Policy information section on page 3 to be lost or otherwise unavailable unless sent to us with this proof of loss claimant's statement
* Agree that our furnishing of this proof of loss statement and any supplemental forms is not an admission that insurance was in force on the Deceased's life nor a waiver of our rights or defenses

**Current trustee certification**
If signing as a current trustee, you additionally
* Declare that the named trust is in full force and effect, without change, except as noted
* Declare that you are a current Trustee of the named trust and have not resigned or been replaced
* Declare that you are acting within the scope of the authority conferred on you by the named trust
* Agree that we have no obligation to verify that the named trust is in effect or that you are acting within the scope of your authority

Under penalties of perjury, you also
* Certify that the tax ID number you have provided on this proof of loss claimant's statement is correct
* Declare that you are not subject to backup withholding because you meet at least one of the following:
  * you are exempt from backup withholding
  * you have not been notified by the IRS that you are subject to backup withholding as a result of a failure to report all interest or dividends
  * the IRS has notified you that you are no longer subject to backup withholding
* Check here if you have been notified by the IRS that you are subject to backup withholding

**Substitute for IRS Form W-9**
This information is being collected on this statement instead of an IRS Form W-9. We will use this information in reporting information to the Internal Revenue Service. The IRS does not require your consent to any provision of this statement other than the certifications required to avoid backup withholding.

Please see the **"State fraud notices"** section on pages 8 and 9 for additional information.

If you are signing as a fiduciary or representative, you must sign in capacity with title in which you are claiming.

See **Special claimant information and signing in capacity instructions** on page 1 for details.

Laws in your state may make it a crime to fill out this form with information you know is false or to omit important facts. Criminal and/or civil penalties can result.

For your protection, the state of **New York** laws require that we provide you with the following statement:

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

Claimant signature            Date

X  _Nanny Avce-Laporte_        _4/15/08_

Capacity  Select one
● Individual          ○ Sole trustee       ○ Co-trustee        ○ Executor/executrix
○ Personal representative                   ○ Administrator
○ Custodian                                 ○ Other _____

Claimant signature            Date

X _____

Capacity  Select one
○ Individual          ○ Sole trustee       ○ Co-trustee        ○ Executor/executrix
○ Personal representative                   ○ Administrator
○ Custodian                                 ○ Other _____

## Proof of loss claimant statement – life insurance

Page 8 of 11

**State fraud notices** *For your protection, some states' laws require that we provide you with the following statements*

| | |
|---|---|
| **Alaska** | A person who knowingly and with intent to injure, defraud, or deceive an insurance company files a claim containing false, incomplete, or misleading information may be prosecuted under state law. |
| **Arizona** | Any person who knowingly presents a false or fraudulent claim or payment of a loss is subject to criminal and civil penalties. |
| **Arkansas and West Virginia** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **California and Texas** | Any person who knowingly presents false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison. |
| **Colorado** | It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado division of insurance within the department of regulatory agencies. |
| **District of Columbia** | It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant. |
| **Delaware** | Any person who knowingly, and with intent to injure, defraud or deceive any insurer, files a statement of claim containing any false, incomplete, or misleading information is guilty of a felony. |
| **Florida** | Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree. |
| **Idaho** | Any person who knowingly, and with intent to defraud or deceive any insurance company, files a statement of claim containing any false, incomplete, or misleading information is guilty of a felony. |
| **Indiana** | A person who knowingly and with intent to defraud an insurer files a statement of claim containing any false, incomplete, or misleading information commits a felony. |
| **Kentucky** | Any person who knowingly, and with intent to defraud any insurance company or other person, files a statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime. |
| **Louisiana** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **Maine, Tennessee, Virginia and Washington** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines or a denial of insurance benefits. |
| **Minnesota** | A person who files a claim with intent to defraud or helps commit a fraud against an insurer is guilty of a crime. |
| **New Hampshire** | Any person who, with a purpose to injure, defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is subject to prosecution and punishment for insurance fraud, as provided in RSA 638:20. |
| **New Jersey** | Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties. |
| **New Mexico** | Any person who knowingly represents a false or fraudulent claim for payment of loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to civil fines and criminal penalties. |

## Proof of loss claimant statement – life insurance

Page 9 of 11

**State fraud notices** *For your protection, some states' laws require that we provide you with the following statements*

| | |
|---|---|
| **Ohio and Oregon** | Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement may be guilty of insurance fraud. |
| **Oklahoma** | Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony. |
| **Pennsylvania** | Any person who knowingly, and with intent to defraud any insurance company or other person, files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties. |
| **Puerto Rico** | Any person who, knowingly and with the intent to defraud, presents false information in an insurance request form, or who presents, helps or has presented a fraudulent claim for the payment of a loss or other benefit, or presents more than one claim for the same damage or loss, will incur a felony, and upon conviction will be penalized for each violation with a fine no less than five thousand dollars nor more than ten thousand dollars, or imprisonment for a fixed term of three years, or both penalties. If aggravated circumstances prevail, the fixed established imprisonment may be increased to a maximum of five years; if attenuating circumstances prevail, it may be reduced to a minimum of two years. |
| **South Dakota** | Any person who knowingly makes any false or fraudulent statement or representation with reference to any application for insurance is guilty of a Class 1 misdemeanor. Any person who knowingly presents or causes to be presented a false or fraudulent claim for the purpose of obtaining any money or benefit, or who submits any proof in support of such a claim for the payment of a loss upon a contract of insurance, or who prepares, makes, or subscribes a false or fraudulent account, certificate, affidavit or proof of loss, or other document or writing, with intent that the same may be presented or used in support of such a claim, is guilty of a Class 2 misdemeanor if such claim is for an amount of four hundred dollars or less; a Class 1 misdemeanor if such claims is for an amount greater than four hundred dollars and less than one thousand dollars; and a Class 4 felony if such claim is one thousand dollars or greater. |

## Proof of loss claimant statement – life insurance

### Frequently asked questions concerning the claims process

**Proof of loss claimant statement**

**Q. Who is the "Claimant"?**
A. A claimant is the person or entity claiming death proceeds under a policy. Each beneficiary must complete a separate Claimant's Statement.

**Q. After I complete the Claimant's Statement, can I fax it to you?**
A. No. We require the original document with original ink signatures.

**Q. May I copy this Claimant's Statement for other claimants' use?**
A. Yes. You may copy the form; however, we require original ink signatures on each form submitted to us.

**Q. Why is any amount withheld for the payment of taxes . . . I thought life insurance proceeds were income-tax free?**
A. Generally life insurance death proceeds are income-tax free, but in certain situations, they are taxable, e.g., when the policy has been transferred for value. Any interest paid on death proceeds is subject to Federal and state taxation. Withholding rules apply to taxable payments. If provided with a social security or tax identification number, we may not be required to withhold unless you specifically indicate a withholding percentage in the Claimant information section on page 2.

**Q. What is an IRS Form 712?**
A. IRS Form 712 is a gift or estate tax form that may need to be filed with the deceased's final estate tax return. At your request, we will complete this form to provide the value of the policy as of the date of death. For more information, please contact your attorney or tax advisor.

**Q. What is a Secure Access Account?**
A. A Secure Access Account is an interest bearing draft account that is an alternative to receiving proceeds in a lump sum by check. Once you receive your account information, you will have immediate access to your proceeds.

**Q. Am I subject to backup withholding?**
A. You are subject to backup withholding with respect to interest paid if you
- Have been notified by the IRS that you have underreported dividends or income
- Fail to certify on IRS Form W-9 or a valid substitute form that you are not subject to backup withholding.

**Q. Does the signature on the Claimant's Statement need to be notarized?**
A. No. The Claimant's Statement does not have to be notarized, but it must contain original ink signatures.

**Q. What is "capacity"?**
A. Capacity is the legal authority that entitles you to claim proceeds. If you are claiming on your own behalf, you are an "individual claimant" and should indicate your capacity as individual. Do not use any other "title" unless you are actually claiming in that capacity. See the Special claimant information and signing in capacity instructions section on page 1 for details.

**Q. If I make a mistake, how do I change information on the Claimant's Statement?**
A. Put a line through an incorrect answer and insert the correct information. DO NOT use correction fluid. The claimant must initial all corrections.

**Certified death certificate**

**Q. Will you accept a copy or fax of the original certified death certificate?**
A. No. We must have an original certified death certificate.

**Q. What makes it a certified death certificate?**
A. Certified death certificates have either a raised seal or a multicolored signature seal from the county, city or state that issued the certificate. In addition, the original death certificate should contain the signature of an appropriate officer of the county, city or state.

**Q. Will you accept a certified death certificate with a pending death cause?**
A. No. We must have a certified death certificate with a final cause of death. We are happy to return this certificate to you upon request.

**Q. Are there any special requirements if the insured died in a foreign country, i.e., outside the United States or its territories.**
A. We require an original certified death certificate, and, if appropriate, a Death of an American Citizen Abroad document. A Death of an American Citizen Abroad document is not an acceptable substitute for an original certified death certificate. In addition, we may require a cancelled passport, a copy of airline tickets, funeral/cremation bills, remains transport information/bills, or any other information we deem necessary based on the specific circumstances of your claim. To avoid delays, you should contact us immediately for detailed instructions.

**Deceased primary beneficiary**

**Q. If the primary beneficiary is deceased, can I send a copy of the certified death certificate for the deceased primary beneficiary?**
A. Yes. We only require a copy of the certified death certificate for any deceased beneficiary.

# Proof of loss claimant statement - life insurance

## Frequently asked questions concerning the claims process *Continued*

**The original policy**

**Q.** Will you accept a copy of the original policy?
**A.** No. We require the complete original policy, if available. You may make a copy of the original policy for your records.

**Q.** What if the original policy is lost or otherwise unavailable?
**A.** Simply complete and sign the Claimant's Statement. By signing the Claimant's Statement, you are declaring that all original policies and any duplicates and certificates are lost or otherwise unavailable unless sent in with the Claimant's Statement.

**Trust claimant**

**Q.** What claimant information for a trust do I include on the Claimant's Statement?
**A.** You need to indicate the name of the trust under "Claimant's Name." The trust name should include the date of the trust. For "Claimant's Address," indicate a trustee's address where the death proceeds should be delivered.

**Q.** If there are multiple trustees, how many need to sign the Claimant's Statement?
**A.** Each current trustee must sign the Claimant's Statement in his/her capacity as Co-Trustee unless the Trust document confers on one trustee the authority to act alone.

**Q.** Why do we require a trust to provide a Tax Identification Number (TIN)?
**A.** A person who is not an individual is required by Federal income tax regulations to furnish a TIN to a payor of income. Thus, a trust must submit its TIN. Some trusts are grantor trusts under Federal income tax law. The trustee of the grantor trust may provide the social security number of a living grantor or of a person treated as the owner of the trust under income tax law instead of the trust's TIN. In the typical case in which there is a single grantor of the grantor trust and that Grantor is the insured who has died, the trustee must furnish the trust's TIN, not the social security number of the grantor/trustee.

**Name change of the beneficiary**

**Q.** If the beneficiary's name has changed since the last beneficiary designation, what do I provide to validate the name change?
**A.** If a beneficiary's name has changed because of marriage or divorce, we require a copy of the marriage certificate or divorce decree. If the beneficiary's name has changed because of personal preference, we will require a court document indicating the name change from the birth name to the requested name.

**Collateral assignment**

**Q.** Why does a beneficiary have to complete a Claimant's Statement when there is a collateral assignee?
**A.** To avoid potential disagreements over the amount payable to the beneficiary and the collateral assignee.

**Q.** Why do you require a statement from the beneficiary and collateral assignee agreeing to the amount claimed by the collateral assignee?
**A.** To avoid potential disagreements over the amounts payable. The agreement statements, indicating the amount that was due at the time of death of the insured, will expedite processing of your claim.

**Q.** If the collateral assignment has already been released, what needs to be provided?
**A.** A release of assignment from the collateral assignee. If the assignee is a bank, we will require an officer to sign the collateral assignment release.

**Funeral home assignment**

**Q.** Can the death claim proceeds from the policy be assigned to a funeral home?
**A.** Yes. All designated beneficiaries must complete an appropriate assignment form provided by the funeral home and that form must be submitted to us prior to the payment of the claim along with a Claimant's Statement for each beneficiary.

**Power of attorney**

**Q.** If I am signing as the Power of Attorney for the claimant, what do I need to send in as proof?
**A.** Submit a copy of the executed Power of Attorney (POA) papers which give you the power to collect proceeds. You must sign the Claimant's Statement and indicate your capacity as "Power of Attorney for the Beneficiary." Example of a proper signature: Jane Doe by John W. Doe, Attorney-in-fact under POA dated MM/DD/YYYY.

**"Surviving" beneficiary designations**

**Q.** If the beneficiary designation stipulates "surviving" children or siblings or other similar grouping, why do you require a notarized statement from each beneficiary indicating the name of each survivor?
**A.** To validate all applicable beneficiaries and avoid potential disagreements over payment amounts. An agreement among all survivors insures that we pay the proper amounts to the proper parties and greatly reduces the risk of legal action to restore improper or misdirected payments.

# EXHIBIT E

Correspondence of:
Joseph Lanni, Esq.
Joseph Lanni, P.C.
(April 15, 2008)

**The Law Firm Of**
**JOSEPH LANNI, P. C.**
138 Chatsworth Avenue, Suites 6 – 8
Larchmont, New York 10538
Tel: (914) 834-6600  /  Fax: (914) 834-0152


April 15, 2008

**VIA CERTIFIED MAIL**

Soronya Blair, Claims Dept.
Genworth Life Insurance Co.
3100 Albert Lankford Dr.
Lynchburg, VA 24501


|  |  |  |
|---|---|---|
| **RE:** | **Insured:** | **ADAM LAPORTE** |
|  | **Beneficiary:** | **NANCY LAPORTE** |
|  | **Life Insurance Policy No.:** | **M318962** |

Dear Ms. Blair:

The undersigned represents Nancy LaPorte, the widow of Adam LaPorte and primary beneficiary of a life insurance policy issued by the predecessor of your insurance company.

Enclosed please find the following documents:

1. The complete original life insurance policy (No. M318962) issued to Adam LaPorte on January 26, 2005;

2. A certified raised seal Certificate of Death for Adam LaPorte;

3. Proof of Loss Claimant's Statement (11 pages) completed and signed by Nancy LaPorte;

4. Final M.E. Autopsy Report for Adam LaPorte (PME 06 – 43.2), dated April 3, 2008, (5 pages & 2 page addendum) attached to Proof of Loss Physician Statement.

*S. Blair, Claims Dept.*
*Genworth Life Insurance Co.*
*April 15, 2008*
*Page 2*

      Mrs. LaPorte has entirely complied with the requirements for submitting a claim for the proceeds of this life insurance policy pursuant to both the policy provisions (see, page 1) and the law of the State of New York. According to the policy and applicable law, there are no other requirements imposed on my client to properly claim these life insurance proceeds. Please issue a check for $500,000.00 in lump sum payment representing the full proceeds of this life insurance policy made payable to Nancy LaPorte and forward same to her residence address (with a copy of the check and any accompanying correspondence to our offices) within twenty-one (21) days. If a decision is made to disclaim coverage under this policy, please advise my client and state all grounds for the disclaimer in writing (with a copy of the correspondence to our offices) within (21) days. Kindly direct any other forms of communication (e.g.: telephone calls, etc.) concerning this matter to our offices.

      Your anticipated cooperation with the above requests is appreciated.

Very truly yours,

**JOSEPH LANNI**

JL/as
Enclosures

# EXHIBIT F

# Proof of Loss Physician's Statement



**Genworth**
Financial

Genworth Life & Annuity
Genworth Life
Genworth Life of New York
P. O. Box 10718
Lynchburg, VA 24506-0718
Tel: 888 325.5433

## Proof of loss physician statement
For life insurance
from Genworth Life and Annuity Insurance Company, Genworth Life
Insurance Company and Genworth Life Insurance Company of New York[†]

Page 1 of 2
- The primary physician of the deceased must complete this form
- Please print clearly using blue or black ink, cross through any mistakes (do not use correction fluid) and initial any corrections, or we may not be able to process this claim
- Attach a separate sheet if more space is required for additional information in any section

---

**Decedent information** *The person who has died*

Name: First, Middle, Last
*ADAM LAPORTE*

Apparent age at death
*37*

Address: Residence at time of death
*10 Ashley Rd*

City *Mahopac*          State *NY*          Zip *10541*

Length of time you knew the deceased    Date of death    Place of death

**(1) DECEDENT WITHOUT PRIMARY CARE PHYSICIAN AT**
**TIME OF DEATH**

**Manner of death** *Select one*   ○ Natural   ○ Accidental   ○ Suicide   ○ Homicide

*Provide details and duration of illness or injuries for the following questions*

Immediate cause of death                     Duration

**(2) DECEDENT'S DEATH DID NOT OCCUR IN A HOSPITAL**
**OR MEDICAL FACILITY. DECEDENT NOT ATTENDED BY**
Contributory cause of death                  Duration

**PHYSICIAN AT TIME OF DEATH**
Other chronic diseases or impairments        Duration

Briefly describe circumstances/injuries if death was due to accident, suicide or homicide

**(3) PLEASE SEE ATTACHED FINAL AUTOPSY REPORT**
**OF PUTNAM COUNTY CORONER + CERTIFICATE**
Was an official inquiry held?   ○ Yes   ○ No
**OF DEATH** Was a post-mortem examination held?  ○ Yes   ○ No
If "Yes" to either or both above questions, provide details *BECAUSE OF LOSS*

**PHYSICIAN'S STATEMENT, IN RESPONSE TO**
**REQUEST FOR INFORMATION ON THIS FORM.**

---

**Previous illness**    Date of first treatment for last illness    Date of last treatment for last illness

*Provide details regarding each condition you treated or advised on for the deceased prior to the last illness*

Nature of condition

Date of first treatment          Duration          Result of treatment

Nature of condition

Date of first treatment          Duration          Result of treatment

---

[†]Only Genworth Life Insurance Company of New York is licensed in New York.

44385PSCON 113007

## Proof of loss physician statement

Page 2 of 2

**Substance use**

In the five years prior to the date of death, did the deceased use any form of nicotine?
○ Yes          ○ No

Other than as prescribed by a physician, had the deceased used any drugs, received treatment for drug or alcohol abuse, or been advised to seek such treatment?
○ Yes          ○ No

If Yes, please explain

_____

_____

_____

**Medical facility admittance**

In the five years prior to the date of death, had the deceased been admitted to a medical facility?
○ Yes          ○ No

If Yes, please describe the reason for admission

_____

**Physician/practitioner information**

Provide the name and address of each physician or other practitioner who attended the deceased within the last five years prior to death

Name *First, Middle, Last*

_____

Address

_____

City _____ State _____ Zip _____

Name *First, Middle, Last*

_____

Address

_____

City _____ State _____ Zip _____

Name *First, Middle, Last*

_____

Address

_____

City _____ State _____ Zip _____

**Physician declaration and signature**

By signing below, you declare that the information provided on this statement is true and complete to the best of your knowledge and belief.

Printed name _____ Phone number _____

Address

_____

City _____ State _____ Zip _____

Physician signature *Must be original, hand-written signature*          Date

X _____ M.D. _____

44385PSCON 113607

# EXHIBIT G

## Correspondence of:
## Genworth Financial, Inc., &
## Genworth Life Ins. Co. of N.Y.
## (April 25, 2008)

**Genworth**
Financial

Genworth Life Insurance of New York
Company
3100 Albert Lankford Drive
P.O. Box 10718
Lynchburg, VA 24501

April 25, 2008

**The Law Firm of
Joseph Lanni, P.C.
138 Chatsworth Ave Ste. 6-8
Larchmont NY 10538**

RE: Adam Laporte
Policy # M318962

Dear Mr. Lanni:

We are in receipt of the information that you have submitted on the above referenced policy number on behalf of Nancy Arce-Laporte.

We will conduct a routine claim investigation on the above referenced file since Mr. Laporte's death occurred within two years from the policy date of issue in accordance to policy provisions. The statement on the Authorization for release of information form is noted. Please note that we do require this forms to be completed. We cannot begin our investigation until the Authorization for release of information form is completed and returned to our office.

The purpose of our investigation is to validate the information that was provided to us on the application for insurance. In such situations, it is our normal business procedure to obtain medical records and other information in order to validate the answers given on the application for insurance. A claim decision cannot be rendered for claim benefits until we have received and reviewed all records needed to complete our evaluation.

Also it is noted that Mr. Laporte referenced a doctor on his application. Please provide us with the full name and address of Dr. Gonzalo in New York. If you should have any questions, please feel free to contact me toll-free at **888-325-5433, ext. 5533.**

Sincerely,

Soronya Blair
Claims Department
888 325 5433
434 948 5443 (fax)

/slb

# EXHIBIT H

## Correspondence of:
## Genworth Financial, Inc., &
## Genworth Life Insurance Co. of N.Y.
## (April 25, 2008)



**Genworth**
Financial

Genworth Life Insurance of New York
Company
3100 Albert Lankford Drive
P.O. Box 10718
Lynchburg, VA 24501
April 25, 2008

**Nancy Laporte**
**10 Ashley Rd**
**Mahopac NY  10541**


RE: Adam Laporte  - Policy # M318962

Dear Ms. Laporte:

As of today all requirements in our March 26, 2008, correspondence remains outstanding.
As beneficiary of this claim the following items are required for the completion of our claim process:

1. Proof of Loss Claimant's Statement Part 1 and Part 3 to be completed and signed by the beneficiary.  Should interest be paid on the proceeds, the IRS will require the beneficiary's social security number on the forms.

2. A certified death certificate.

3. The return of the complete original policy.

4. An attending physician's statement to be completed and signed by the deceased's regular doctor.

5. An authorization to be completed by a personal representative of the estate.  If no representative has been appointed, a spouse or other authorized person may sign the form.

Due to Mr. Laporte's death occurring within two years from the policy's date of issue, we will be conducting a routine investigation in accordance with policy provisions, including an interview with the next of kin.

If you should have any questions, please feel free to contact me toll-free at **888-325-5433, ext. 5533.**

Sincerely,

Soronya Blair
Claims Department
888 325 5433
434 948 5443 (fax)


/slb

# EXHIBIT I

Correspondence of:
Joseph Lanni, Esq.
Joseph Lanni, P.C.,
(May 16, 2008)

**The Law Firm Of**
**JOSEPH LANNI, P. C.**
138 Chatsworth Avenue, Suites 6 – 8
Larchmont, New York 10538
Tel: (914) 834-6600  /  Fax: (914) 834-0152

May 16, 2008

**VIA FACSIMILE (434) 948-5443**
**VIA CERTIFIED MAIL**

Soronya Blair, Claims Dept.
Genworth Life Insurance Co.
3100 Albert Lankford Dr.
Lynchburg, VA 24501

RE:    **Insured:**            **ADAM LAPORTE**
       **Beneficiary:**         **NANCY LAPORTE**
       **Life Insurance Policy No.:   M318962**

Dear Ms. Blair:

We are in receipt of your letter addressed to the undersigned attorney, dated April 25, 2008, and your letter addressed to our client, Nancy LaPorte, dated April 25, 2008. The purpose of this correspondence is to respond to those two letters.

Attached to my correspondence, dated April 15, 2008, I submitted to you the following documents on behalf of our client, Mrs. LaPorte:

1. The complete original life insurance policy (No. M318962) issued to Adam LaPorte on January 26, 2005;

2. A certified raised seal Certificate of Death for Adam LaPorte;

3. Proof of Loss Claimant's Statement (11 pages) completed and signed by Nancy LaPorte;

S. Blair, Claims Dept.
*Genworth Life Insurance Co.*
*May 16, 2008*
*Page 2*

    4.  Final M.E. Autopsy Report for Adam LaPorte (PME 06 – 43.2), dated April 3, 2008, (5 pages & 2 page addendum) attached to Proof of Loss Physician Statement.

        In response to your letters, I have again scrupulously reviewed the policy issued by your insurance company to Adam LaPorte in a line by line manner. According to the specific language of that policy, payment of the death proceeds to the beneficiary of this life insurance policy will not be made until your insurance company has received: (1) the policy; (2) due proof of death; and (3) a written claim for the death proceeds completed on a form supplied by your company (*i.e.:* "Proof of Loss Claimant's Statement"). The above listed materials (Items 1 – 4) that were submitted to your offices as attachments to my April 15, 2008, correspondence fully satisfy the three conditions imposed by your insurance company for payment of this life insurance policy. You have received the 11 page claim form (*i.e.:* "Proof of Loss Claimant's Statement") completed and signed by the beneficiary, a certified death certificate, and the original policy. The official ruling on the death certificate for the manner of death is "undetermined circumstances". To date, your company has not cited any valid ground set forth within the language of the policy to disclaim coverage or refuse payment of the full death benefits of $500,000.00. In sum, Mrs. LaPorte has entirely complied with the requirements for submitting a claim for the proceeds of this life insurance policy pursuant to both the policy provisions (see, page 1) and the law of the State of New York. It is now the responsibility of your insurance company to meet its obligations under the policy and state law by payment of the full death proceeds.

        Nowhere in the policy does it state that the beneficiary is required to do anything more than comply with aforementioned three conditions of submitting the policy, a certified death certificate, and the written claim form, i.e., "Proof of Loss Claimant's Statement". According to my review of the policy and applicable law, there are no other requirements imposed on my client to properly claim these life insurance proceeds. The beneficiary is not required by any policy provision, contractual term, statute, regulation or other authority to submit to an interview, sign an authorization for the decedent's medical records, obtain an attending physician's statement, provide services or assistance for any investigation, or perform any other act or task to claim the $500,000.00 death proceeds under this life insurance policy. If you believe that Mrs. LaPorte is required by the policy or applicable law to do anything more than satisfy the three conditions set forth above, please advise me of the specific authority and the exact language that imposes such requirements upon a beneficiary.

*S. Blair, Claims Dept.*
*Genworth Life Insurance Co.*
*May 16, 2008*
<u>*Page 3*</u>

Your April 25, 2008, letter advises that your insurance company "will conduct a routine claim investigation on the above referenced file" due to the insured having died within two years of the policy issue date. You further state that:

> "The *<u>purpose of our investigation</u>* is to *<u>validate</u>* *<u>the information</u>* that was provided to us on the *<u>application for insurance</u>*. In such situations, it is our normal business procedure to *obtain medical records and other information in order to <u>validate</u> <u>the answers</u> given on the <u>application for insurance</u>*. A claim decision cannot be rendered for claim benefits until we have received and reviewed all records needed to complete our evaluation."

(*Emphasis added.*) In essence, this statement constitutes admissions on your part of the following: (1) your insurance company is currently not aware of any valid ground under the policy to disclaim coverage or refuse to pay the full $500,000.00 death proceeds; (2) your insurance company failed to investigate the statements made on the application for insurance submitted by the insured prior to issuance of the policy or during the period of the insured's lifetime (22 months) after policy issuance; (3) your insurance company is conducting its investigation for the sole purpose of attempting to find grounds to disclaim coverage or refuse payment of the death proceeds on the basis of a suspected misstatement by the insured regarding past medical history; and (4) the stated purpose of your insurance company's investigation is irrelevant to the insured's cause of death, manner of death and the claim made by our client. Such admissions are evidence of bad faith on the part of your insurance company in the processing of our client's claim and an intentional breach of its contractual obligations.

It should be noted that, at the time of the application for insurance, the insured signed and submitted an "Authorization to Collect and Disclose Information", dated November 11, 2004, to enable your insurance company to obtain, among other things, any and all medical related information pertaining to the insured from any source including physicians and hospitals. A copy of that authorization was made a part of the life insurance policy upon its issuance by your insurance company. (*See, policy.*) Since you are now requesting an authorization from the beneficiary, it is apparent that your insurance company never used this authorization to investigate the medical history statements on the application for insurance at any time including prior to policy issuance, during the 22 months that the insured survived after policy issuance, and during the approximately three years from the policy issuance date to the claim date. Instead, your insurance company chose to collect and accept premiums paid on this policy without

*S. Blair, Claims Dept.*
*Genworth Life Insurance Co.*
*May 16, 2008*
*Page 4*

using this authorization to conduct an investigation into the insured's statements on the insurance application or his fitness for life insurance. In essence, such lengthy inaction by your insurance company indicates that the insured's application statements were considered satisfactory for the purposes of issuing insurance and receiving premium payments. Those same statements have somehow become unsatisfactory and require investigation now that our client has submitted her claim for the death benefits on this policy. This failure to act by your insurance company constitutes a waiver of any right to disclaim coverage on the basis of a material misstatement.

Any investigation "in order to *validate the answers* given on the *application of insurance*" is thoroughly irrelevant to the claim submitted by our client, Mrs. LaPorte, and any legal issues that can be raised in connection with that claim. According to the death certificate, the official ruling regarding the insured's manner of death was "undetermined circumstances" and the cause of death was "fractures of skull, ribs, and upper extremity, lacerations and contusions of brain, lungs and liver". In essence, the insured indisputably died of massive trauma inflicted injuries, not as the result of a pre-existing medical condition. Thus, any alleged misstatement regarding past medical history on the insured's application is irrelevant under applicable law to this claim for death proceeds under the policy.

Finally, your letter to Mrs. LaPorte, dated April 25, 2008, asserts that "[a]s of today, *all requirements* in our March 26, 2008, correspondence remains outstanding". That statement is simply not true. We have already submitted to you the 11 page claim "Proof of Loss Claimant's Statement" form, a certified death certificate, and the complete original policy and you have acknowledged the same in your correspondence to me, also dated April 25, 2008. Moreover, we ask once again that you refrain from communicating directly with our client and request that all future communications be made directly to the undersigned attorney.

Please issue a check for $500,000.00 in lump sum payment representing the full proceeds of this life insurance policy made payable to Nancy LaPorte and forward the same to our offices by June 2, 2008. If a decision is made by your insurance company to disclaim coverage under this policy, please advise me in writing and state all grounds for the disclaimer by June 2, 2008. A failure to make payment of the $500,000.00 death proceeds of this life insurance policy by June 2, 2008, by itself will be considered an intentional and bad faith breach of the contractual policy provisions and require us to compel specific performance of your insurance company's contractual obligations and other available remedies.

*S. Blair, Claims Dept.*
*Genworth Life Insurance Co.*
*May 16, 2008*
*Page 5*

      Your cooperation with the requests contained in this letter will be appreciated. Thank you for your prompt attention to these matters.

Very truly yours,

**JOSEPH LANNI**

JL/as

# EXHIBIT J

Correspondence of:
Genworth Financial, Inc.,
& Genworth Life Insurance Co. of N.Y.
(July 3, 2008)



## Genworth
### Financial

Genworth Life Insurance of New York
Company
3100 Albert Lankford Drive
P.O. Box 10718
Lynchburg, VA 24501

July 3, 2008

**The Law Firm of
Joseph Lanni, P.C.
138 Chatsworth Ave Ste. 6-8
Larchmont NY  10538**

RE: Adam Laporte
Policy # M318962

Dear Mr. Lanni:

We currently still await the Authorization for release of information form. Our routine claim investigation on the above referenced file will begin once the Authorization for release of information form is received.

Our investigation is to validate the information that was provided to us on the application for insurance. A claim decision cannot be rendered for claim benefits until all records are received and reviewed. All records needed to complete our evaluation. Records cannot be requested until the Authorization for release of information form is received.

Also we currently still await the full name and address of Dr. Gonzalo in New York.  If you should have any questions, please feel free to contact me toll-free at **888-325-5433, ext. 5533.**

Sincerely,

Soronya Blair
Claims Department
888 325 5433
434 948 5443 (fax)

/slb